## [GORDON *v.* THE STATE OF IOWA.

Unless it is clearly shown that the discretionary power granted to the District Court, in applications for a change of venue, by section 3272 of the Code, has been improperly exercised, the appellate court will not interfere with the decision.

Under section 3039 of the Code, which provides that a defendant may be found guilty of any offence, the commission of which is necessarily included in that which is charged in the indictment, a party indicted for murder, may be found guilty of manslaughter.

Where in a criminal case, the defendant offered a witness, who proved the general good character of the defendant, as a good, quiet, and peaceable citizen; and where the state was permitted, on cross-examination, to ask the witness, if he knew of instances in which the prisoner had been engaged in difficulties with individuals, to which question the defendant objected; and where the state was permitted to show by the witness, instances of difficulties by the prisoner, with others; *Held,* That the court erred in permitting the evidence to go to the jury.

To show that the answer of a witness to an improper interrogatory, disclosed improper testimony, it is not necessary that such answer should be set out in words. It is sufficient, if it satisfactorily appears, that he testified of, and detailed matters which ought not to be inquired of, and ought not to be considered by the jury.

### *Error to the Lucas District Court.*

THE defendant was indicted in the county of Monroe, for the crime of murder. At the next term, the said defendant, owing to the prejudice and excitement against him in the county of Monroe, had the venue changed to the county of Lucas. The cause being thus transferred, he at the first term of that court, applied for a change of venue to another judicial district, based upon an affidavit, that he could not before that court, receive a fair and impartial trial, owing to the prejudice of the judge there presiding. This application was overruled, and the prisoner put upon his trial. During his trial, it appears that defendant introduced a witness, by whom he proved, his general good character as a good, quiet, and peaceable citizen. After which, the state on cross-examination, asked the witness if he knew of instances in which

Gordon v. The State of Iowa.

the prisoner had been engaged, or had had difficulties with individuals; to which question the prisoner objected, and his objection was overruled by the court, and the state was permitted to go into an examination of particular instances of difficulties by the prisoner with others, "to which ruling prisoner excepted." It is further shown, that the court instructed the jury that under the said indictment, they could find the prisoner guilty of manslaughter, to which instruction he excepted. A verdict of guilty of manslaughter was returned; motions in arrest and for a new trial overruled, and the prisoner sentenced to the penitentiary for three years, and adjudged to pay a fine of one hundred dollars. To reverse this conviction, he prosecutes this writ of error.

*H. D. Ives*, for the plaintiff in error, made the following points:

1. The verdict of the jury was contrary to law. The indictment must charge but one offence. Code, §§ 2917 and 2918. Upon an indictment for murder, the jury may find defendant guilty in the second degree. Code, 2569. What the verdict should be. Code, § 2571. Manslaughter is another offence. Code, § 2576. The defendant had a right to know the crime charged against him, and specifically. Constitution of Iowa, §§ 10 and 11; Const. United States, §§ 5 and 6; Walker's Int. to Am. Law, 444.

2. The motion for a change of venue, was improperly overruled. Code, 456.

3. The court permitted improper evidence to go to the jury. 1 Phil. Ev. 469; 2 Roscoe's Crim. Ev. 97; *Commonwealth* v. *Hardy*, 2 Mass. 317; Whart. Crim. Law, 295; *State* v. *Canton*, 15 New Hamp. 169; 1 Chitty's Crim. Law, 574; 2 Russ. on Crimes, 786; 2 Carter, 96.

*Samuel A. Rice*, (Attorney-General), and *Knapp & Caldwell*, for the state.

1. Under section 3272, of the Code of Iowa, for change of venue, on account of the prejudice of the judge—if the court re.use to grant such change—such ruling of the court below

cannot be reviewed in this court.    *Spence* v. *State*, 8 Black-
ford, 282 ;  *Boswell* v. *Flickheart*, 8 Leigh, 364 :  5 U. S. Dig.
Venue, § 24;  *Goraway* v. *Smith*, 3 Humph. 154;  *Findley* v.
*State*, 5 Blackf. 576;  *Millison* v. *Holmes*, 1 Smith, (Ind.) 55 ;
10 U. S. Dig. Venue, § 4 ;  1 Harrington, 382 ;  5 Ib. 582.

2. A party on cross-examination, can examine as to par-
ticular facts, to show the witness's means of information,
and this applies to criminal as well as civil cases.    1 Greenl.
Ev. §§ 431, 446;  3 Ib. §§  23, 24.

3. The cross-examination is a matter to be regulated by
the discretion of the court, under all the circumstances of the
case.    1 Greenleaf's Ev. §§ 431, 447, 449 ;  2 Cow. & Hill's
Notes, note 370 ;  1 Greenleaf's Ev. 446, 448 ;  17 Pickering,
490, § 498.

WRIGHT, C. J.—In this court, the plaintiff in error relies
upon three grounds : First. That the court erred in refus-
ing the change of venue.    Second. In permitting the witness
to be cross-examined as to particular instances of difficulties
on the part of the prisoner, with other persons.    Third. In
instructing the jury that they could find him guilty of man-
slaughter.    The question presented by the first assignment,
was before this court in the case of *Trulock* v. *The State*, 1
Iowa, 515.    It became unnecessary then, to determine it,
however, that judgment being reversed on other grounds.
It being again presented in a very similar case, we proceed
to dispose of it.    The Code, chapter 204, after giving the
prisoner the right to petition for such change, and reciting
what such petition must contain, provides, (section 3272,)
" that such court, in *the exercise of a sound discretion*, may grant
such change of venue; and if the same is prayed on the
ground of objection to the judge, such change must be
awarded to some convenient county or adjoining district;
or if such change is prayed for on the ground of excitement
and prejudice in the county, such change must be awarded
to the nearest and most convenient county, where such pre-
judice and excitement do not exist."    With this discretion,
we do not think we can interfere, unless it is clearly shown

to have been improperly exercised.   There may be cases in which the action of the judge will manifest an abuse of this discretion, clearly developing and establishing his prejudice, and under such circumstances, safety to the citizen, and the integrity of the law, would compel a review.   Nothing of the kind is shown in this case, however.   There is nothing to satisfy us, that the court below exercised any other than a sound discretion, and in such cases, we have no power to control its exercise.   There is, it is true, an apparent im-policy or inconsistency, in allowing a tribunal charged with prejudice, to judge of its presence or absence.   But this, if a fault, is a fault of the law, and one that we cannot remedy. This conclusion is sustained by the construction given to similar statutes in other states. *Findley* v. *The State*, 5 Blackf. 576, under the statute of 1838, which used the words, "at its discretion ;" *Spencer* v. *The State*, 8 Ib. 281, under a stat-ute which used the words, "fair and sound discretion ;" *Millison* v. *Holmes*, 1 Smith, (Ind.) 55 ; *Boswell* v. *Flick-heart*, 8 Leigh, 364 ; and see Humph. 154 ; 1 Harrington, 382, and 5 Ib. 582.   The case of *McGoon* v. *Little*, 2 Gilm. 42, and *Barrows* v. *The People*, 11 Ill. 121, were decided un-der a statute which left no discretion in the court.

We next examine the objection to the instruction given by the court.   It was held in the case of *Benham* v. *The State*, 1 Iowa, 542, that under an indictment for maiming or disfiguring, the prisoner might be convicted of an aggrava-ted assault and battery ; referring to the Code, which pro-vides that a defendant may be found guilty of any offence, the commission of which is necessarily included in that which is charged in the indictment.   Section 3039.   This rule, we think, is decisive of the question here presented.   The pris-oner was indicted for the crime of murder, and under such an indictment, we have no doubt but that he may be found guilty of any offence necessarily included in that charged. That at common law, the defendant might have been con-victed of manslaughter, where the indictment was for murder alone, is not denied ; and with what show of reason it can be claimed that this rule is changed by the Code, we cannot

perceive.   We are referred to § 2918, which provides that on an indictment for a public offence, admitting of different *degrees*, the defendant may be convicted of such offence, or any degree lower than that charged in form in such indictment.   And in connection with this, counsel cites sections 2569, 2570 and 2571, which define murder in the first and second degrees, and require the jury upon the trial of an indictment for murder, if they find the defendant guilty, to inquire and by the verdict ascertain, whether he be guilty in the first or second degree.   The argument attempted to be drawn is, that these directions or requirements are restrictive upon the power of the jury, and that they cannot proceed further, and inquire whether any other offence has, or has not, been committed; but that under an indictment for murder, the prisoner must be acquitted, unless the crime in the first or second degrees, is sustained by the proof.   In this construction we cannot concur.   If this view is correct, then section 3039 has no meaning, when applied to an indictment for murder.   The other view, gives significance to section 2918, and recognizes the right to convict for any offence in the *second* degree, though the indictment in form charges it in the first degree alone.   And it also gives force and meaning to section 3039, which refers not to different degrees of the same offence, but rather to a state of case where the proof shows the commission of an offence necessarily included in that charged, though it may not be a different degree of the same offence.   As to this particular offence, for instance, while homicide is the genus of murder, manslaughter is a species; and by section 2918, there may be a conviction of the second degree, when the first alone is charged; and under section 3039, there may be a conviction for the species, (manslaughter), or any other offence necessarily included in the charge of murder.   On this subject, see the following cases, decided upon statutes containing similar provisions: *State* v. *Fleming*, 2 Strob. 464; *King* v. *The State*, 5 How. (Miss.) 730; *Watson* v. *The State*, 5 Miss, 497; *Plummer* v. *Same*, 6 Ib. 231; and Bishop's Cr. Law, § 538.

It only remains to inquire, whether it was correct to per-

mit the state, on cross-examination of a witness who was called as to the good character of the defendant, to go into proof of particular acts or difficulties on his part? And in permitting this, we think the court erred. It is true, that in the cross-examination of witnesses, the court in the exercise of its discretion, may permit great latitude, but we apprehend that it cannot be so far extended, as to allow the introduction of illegal and improper testimony. The rule permitting this latitude, is rather for the purpose of testing the memory and credibility of the witness, than to enable a party to get before the jury testimony which would be inadmissible, if offered in a direct examination of his own witness. In this case, it appears, that the defendant sought to prove his general good character, as a quiet and peaceable citizen. This he had a right to do. The prosecution then, against his objections, asked the witness if he knew of instances in which defendant had been engaged in difficulties with individuals, and the state was permitted to go into an examination of particular instances of difficulties with others. This would have been clearly improper, if offered by the state as direct testimony, and we cannot conceive it to be any less so, from the fact that it was drawn out on cross-examination. It is evidence of *character*, which is admissible, which of course is to be confined to the trait of character which is in issue, or, as it is expressed by some of the writers, the evidence ought to have some analogy and reference to the nature of the charge. But the evidence must be confined simply to the general character or reputation, and neither can ask questions as to particular facts or difficulties. 1 Chitty's Crim. Law, 574; *Egleman* v. *The State*, 2 Carter, 97; 2 Russel on Crimes, (3d ed.) 704; *The State* v. *Rentar*, 15 N. H. 169; 1 Phillipps Ev. 469, 470, and notes, 319, 320, 321; Roscoe's Cr. Ev. 97, 98. It is insisted, however, by the state, that though the question may have been improper, the record does not disclose that improper testimony was elicted, from the fact that the answer of the witness is not given. We think that to sustain this position in this case, would be extending the rule referred to, too far. To show that the an-

.swer of a witness to an improper interrogatory, disclosed improper testimony, it is not necessary that such answer should be set out in words.    It is sufficient, if it satisfactorily appears, that he testified of and detailed matters which ought not to be inquired of, and ought not to be considered by the jury in finding their verdict.    The record in this case shows, that the " *slate was permitted to go into particular instances of difficulties by the prisoner with others.*"    It would be difficult to show more clearly, what was proved, without setting out the language of the witness, which we do not think is strictly necessary.

Judgment reversed and cause remanded, with instructions to award a trial *de novo.*