THE STATE OF IOWA, Appellee, v. JOEL McGEE, Appellant.

1. **Murder:** EVIDENCE: DEFENDANT'S REPUTATION. On a trial for murder, after a witness for defendant had testified that his reputation for being a quiet and peaceable citizen was good, it was error to allow him, on cross-examination, to be interrogated as to his participation in particular quarrels. (See *State v. Sterrett*, 71 Iowa, 386, and *State v. Gordon*, 3 Iowa, 410.) But, where the answers were all favorable to defendant, the error was no ground for complaint on his part.

2. ———: ———: CONSPIRACY: DECLARATIONS OF COCONSPIRATORS: FOUNDATION. On the trial of one of several defendants for murder, where it was claimed that the crime was the result of a conspiracy between them, *held*, that, before the declarations of a codefendant could be admitted in evidence, it must be shown *prima facie*, to the satisfaction of the judge, that a conspiracy in fact existed, although the question of its existence must finally be submitted to the jury.

3. **Criminal Evidence:** DECLARATIONS OF COCONSPIRATORS: WHEN ADMISSIBLE. It is not the rule that when a conspiracy is formed all admissions, acts and declarations of a coconspirator may be put in evidence against the others, but only such as are done or made in furtherance of their plans.

*Appeal from Marion District Court.* — HON. J. H. HENDERSON, Judge.

FRIDAY, OCTOBER 10, 1890.

INDICTMENT and verdict for murder in the first degree; and from a judgment of imprisonment for life the defendant appeals.

VOL. 81—2

*Hayes Bros.*, for appellant.

*John Y. Stone*, Attorney General, and *Thos. A. Cheshire*, for the State.

GRANGER, J.—The defendant on trial, Joel McGee, was jointly indicted with John McGee, Sr., John McGee, Jr., John Noe and David Cooper, for the murder of Noah Kelso on the thirty-first day of January, 1888. John McGee, Sr., owned a forty-acre tract of land lying south of, and adjoining, the farm of Noah Kelso, known as the "Hogland Forty." The forty was mainly timber with some slough or wild grass land, and on the north side of the tract was some hay belonging to McGee. On the thirty-first day of January, 1888, John McGee, with his sons, John and Joel, John Noe, William Pierce, John Williams and Monta Walters, with three teams, went to the Hogland Forty to draw hay. In the forenoon the hay was taken to Marysville, about one and one-half miles distant. At noon the parties all took dinner at McGee's. In the afternoon they returned to the forty; John McGee, Sr., and Joel each taking a gun,—Joel a double-barreled shotgun, and his father a rifle. The parties, except Joel and his father, went to the stacks to load the teams, and Joel and his father stopped in the timber to hunt. As the parties with the teams were on their way from the stacks, they discovered in the corn belonging to McGee, and on his premises, colts belonging. to Kelso, and they stopped their teams and undertook to catch the colts. In this effort they came upon or discovered Bud Kelso, a son of Noah Kelso, who was with his team and sled on the Hogland Forty, as he "Bud" says, coming from his own land with wood, but, as others say, with a hay rack, boom-pole, axe and a chain, without any wood, and going south instead of north. Some harsh and threatening words were exchanged, as to which there is dispute, and Bud Kelso, with his team and the loose horses, went through a gap in the fence, which had been made by Bud Kelso

before he was seen by the McGees, onto the land of Noah Kelso. Bud Kelso drove home with his team, the horses were unharnessed, and Bud and his father each mounted a horse and rode towards the gap in the fence ; Bud taking with him a large butcher-knife, and his father a loaded musket. Dan Kelso, another son of Noah, went on foot, as he says, and unarmed, but as to this there is a dispute, there being testimony that he carried a revolver. At or near the gap in the fence there was an altercation. Neither of the Kelsos, on the return, went onto the Hogland Forty. Some four or five shots were fired, and Noah Kelso was killed, and his body lay about one hundred and twenty-five yards north of the Hogland Forty on his own land. An examination disclosed seven gunshot wounds : One in the left arm, near the shoulder; one in the left lobe of the lungs ; one in the breast ; one in the back, passing through the left kidney ; one near the *scrotum*, the ball being extracted from the hip ; one on the right side, about the fourth rib, and one in the head, the ball entering the lower part of the left ear, and being extracted from the neck. It is not questioned in this court but that Kelso was killed by one of the McGees; that is, by the father, John McGee, Jr., or Joel. But it is earnestly contended that the fatal shot was not fired by Joel, and that he was not in any sense responsible or liable therefor. It is a practically undisputed fact in the case that Noah Kelso was a man who often threatened to use firearms, and did in some cases discharge them at or towards persons, but without effect, and that he was very quarrelsome. It also appears that the defendant was a quiet and peaceable citizen.

I. Lum Richmond was a witness for the defendant, and on his direct examination he said he had known the defendant for eight years, and that his reputation for being a quiet and peaceable citizen was good. On cross-examination he was asked as to his being engaged in particular quarrels, and against objection was allowed to answer. The ruling was wrong. *State v. Sterrett,*

1. MURDER: evidence : defendant's reputation.

71 Iowa, 386; *State v. Gordon*, 3 Iowa, 410. But the error is without prejudice, for the answers were in every instance favorable to the defendant.

II. A theory of the prosecution is that there was a conspiracy among the defendants, and on the trial it was permitted to prove the statements of David Cooper and George Burk made in defendant's absence. Two objections are urged against the admissibility of the testimony:

2. ——: ——: conspiracy: declarations of coconspirators: foundation.

*First*, that there was no such proof of a conspiracy as to render the admission of such statements competent, and, *second*, that the declarations are not such as are admissible when made by a coconspirator, conceding the existence of the conspiracy. The rule is as to a conspiracy, to justify such evidence, that the proof must show *prima facie*, in the opinion of the judge, its existence. 1 Greenl. Ev., sec. 111; Rosc. Crim. Ev. [7 Amer. Ed. 1874] secs. 417, 418; *State v. George*, 7 Ired. 321; *Card v. State*, 9 N. E. Rep. (Ind.) 591. The question of the sufficiency of such proof is one peculiarly for the determination of the trial court. *Card v. State*, *supra*. It should be borne in mind that the question of the actual existence of a conspiracy is one to be finally submitted to the jury, and that the finding or conclusion of the trial judge is only a basis for the admission of evidence. Without any intimation as to what the ultimate finding on that question should have been, we are of the opinion that the district court did not err in holding that the acts and declarations of the codefendants in the indictment could be admitted in evidence against the defendant on trial.

III. We are next to inquire if the evidence admitted is such as is competent against a coconspirator on trial.

3. CRIMINAL evidence: declarations of coconspirators: when admissible.

Lot King was a witness for the state, and said he had a conversation with John McGee, Sr., on Sunday before the alleged murder, in the absence of Joel McGee, and stated as follows: "I am some acquainted with defendants.

"*Q.* I will ask you whether or not you had any conversation with John McGee, Sr., about Sunday before the alleged killing of Kelso?" (Objected to because incompetent, not shown to be in the presence or hearing of defendant on trial, and at a different time from the date of the killing. Overruled. Defendant excepts.) "*A.* Well, sir, there was a conversation there where Cooper lived. He was finding fault about some hay that had been taken off the Hogland land. I was crawling about the house. Says I to him, 'Mr. McGee, if you make that hay on the Hogland pasture, you had better haul it right home, and not leave it there, and Kelso or no other person could steal it.' Then McGee says: 'He will not be here next winter, and don't you forget it.' "

The following, copied from the abstract, indicates a further ground of complaint: Vess Burk testifies:

"*Q.* I will ask you whether you had any conversation or talk with David Cooper at his house on Sunday, the twenty-ninth day of January, 1888. If so, tell what he said." (Objected to, because incompetent, not in the presence, or claimed to be in the presence or hearing, of defendant. Overruled. Defendant excepts.) "*A.* He said there were some men going to watch some hay that night, and if Kelso come there to the haystack, he would have to be packed off, or taken away, and he asked to borrow my gun. I believe he said there were twelve men going to watch the hay. Joel McGee was not there."

George Burk testified. (Same question asked as above. Same objection. Same ruling. Defendant excepts.) "*A.* He said Dave Cooper was talking about going to watch hay; said he intended to borrow a gun that evening, and if we heard an echo not to be surprised. He said there were twelve men."

Cross-examination: "Did not say what he meant by 'echo.' "

We particularly call attention to the testimony of King and Burk. King says that, after he had advised McGee to move the hay, so that neither Kelso nor any

other person could steal it, McGee said : "He will not be here next winter, and don't you forget it." The rule as to what statements of a coconspirator may be admitted in evidence is stated in the text-books, and in many adjudicated cases. Mr. Greenleaf says : "Every act and declaration of each member of the confederacy, in pursuance of the original concerted plan, and with reference to the common object, is, in contemplation of law, the act and declaration of them all, and is, therefore, original evidence against each of them." 1 Greenl. Ev., sec. 111. *State v. Nash*, 7 Iowa, 346, approved the rule as given by Mr. Greenleaf. Other authorities, equally direct and certain, use such expressions as that the acts or statements must be "in the prosecution of the criminal conspiracy," or "in furtherance of the objects of the conspiracy." *People v. Stanley*, 47 Cal. 113 ; *State v. George, supra; Rex v. Hardy*, 24 State Tr. 199 ; 2 Starkie, Ev. [2 Ed.] 326 ; *Card v. State, supra; State v. Glidden*, 8 Atl. Rep. (Conn.) 890 ; *Spies v. People*, 12 N. E. Rep. (Ill.) 865 ; *Goins v. State*, 21 N. E. Rep. (Ohio) 476 ; *People v. Kerr*, 6 N. Y. Crim. 406, 674. The authorities are, so far as we are advised, in accord with the rule stated.

Is, then, the statement of John McGee, Sr., within the rule ? It seems to us clearly not. The statement was not made in an attempt to further or prosecute the plans of the conspiracy. It was a statement made in a conversation with King, in which John McGee, Sr., had no purpose to aid or carry forward the designs of the confederacy. It is not the rule that, when a conspiracy is formed, all admissions, acts or declarations of a coconspirator may be put in evidence against the others, but only such as are in furtherance of their plans.

The statement of Cooper to George Burk, it seems to us, is of the same character. At the time of making the statement, Cooper was not engaged in the work of the conspiracy, and the remark was not to aid it. We have a fair illustration of the rule by referring to the testimony of the witness Vess Burk. Cooper was there

borrowing a gun to aid in the confederate plan, and the statement was made in that connection, and we think it was proper evidence.

The errors suggested were certainly prejudicial under the condition of the record. A theory of the defense is that the fatal shots, by whomsoever fired, were in self-defense, and the evidence is conflicting as to whether Kelso or one of the McGees fired the first shot. It is true that the Kelsos, knowing the McGees were at the gap in the fence armed, armed themselves and came there, and, after an altercation, the shots were fired. With a conflict as to who first fired, the inference to be drawn from the proven statements as to the contemplated use of guns, and that Kelso would not be there the next winter, would certainly have its influence with the jury in forming a conclusion. The arguments indicate no dispute as to resulting prejudice if the admission of the statements was error. The record presents no other question likely to arise on another trial that demands our attention. The judgment is REVERSED.