## STATE OF IOWA v. WILLIAM TIPPET, Appellant.

**Evidence:** SUSTAINS MANSLAUGHTER. In a prosecution for murder it appeared that defendant and deceased were in a saloon, and that defendant picked up the proprietor's revolver, which was lying near by, pointed it at deceased, and that it was discharged and killed the latter. Defendant knew that the revolver was out of order and likely to go off. *Held,* sufficient to sustain a conviction of manslaughter.

MURDER IN SECOND DEGREE. Where it appeared that defendant pointed a loaded pistol at deceased, and that it was discharged, thereby killing him, an instruction as to murder in the second degree is proper.

**Practice:** OPINION EVIDENCE. The opinion of a doctor who attended deceased after the shooting, and assisted in the *post mortem* examination of the body, is competent as to the cause of death.

IDENTIFICATION. Where a physician testifies that he took a bullet from the body of the deceased, that, when he went before the grand jury, he left it in possession of that body, and identifies it at the trial, it is proper to admit it in evidence.

MISCONDUCT IN QUESTIONING. Where a witness testifies as to defendant's good character, questions as to his knowledge of particular instances of trouble which defendant had been in, which elicit no unfavorable replies, are not ground for reversal.

MISCONDUCT OF COUNSEL. Statements by the prosecutor, in opening the case, that he would prove by the dying declarations of deceased that defendant killed him, when made in good faith, and under the belief that the declarations were admissible, are not ground for reversal because the declarations were afterward excluded.

SAME. Statements of inferences by the state's attorney in the argument, drawn from the facts in the evidence are not ground for reversal where they are not shown to have been made in bad faith or in violation of the rules applicable to such arguments.

INCLUDED OFFENSES. Where the defendant, if not innocent, is guilty of murder or manslaughter, a failure to instruct as to crimes lower in degree than manslaughter is not error.

*Appeal from Mahaska District Court.*—Hon. A. R. Dewey, Judge.

## Tuesday, May 21, 1895.

The defendant was indicted for the crime of murder in the first degree. He was convicted of the crime of manslaughter, and sentenced to a term of six months in the penitentiary, from which he appeals.—*Affirmed.*

*Bolton & McCoy, J. C. Williams,* and *W. S. Kenworthy* for appellant.

*Milton Remley,* attorney general, *Byron W. Preston,* and *Thomas A. Cheshire* for the state.

Kinne, J.—I. It is insisted that the verdict is not supported by the evidence. The facts, in brief, as disclosed by this record, are that the deceased and defendant were in a saloon at or near the town of Carbonado, in Mahaska county, Iowa. Both these parties, and others, had been invited by O'Brien, the saloon keeper, to take a drink with him, and were standing near the bar while O'Brien was preparing to furnish the drinks. O'Brien had a revolver, and, as he passed behind the bar, he laid it upon an ice chest. Defendant picked it up, and, while it was in his hands, it was discharged, and the ball entered the neck of the deceased, causing a wound from which he died. Defendant claims he did not fire the fatal shot. He says he does not know who did. He did not see any smoke, nor did he see any one have a revolver, though he did see deceased when he fell. It appears that, when defendant was charged with the crime by decedent's brother, he did not deny it. To

another brother of deceased he said, "For God's sake, not to tell his [defendant's] mother about it." After the shooting, defendant tried to stop the flow of blood from the wound. Deceased told his brother who shot him. One Bolden (a colored man) was in the saloon when the shooting took place. He testified that O'Brien laid his revolver on the ice box; that defendant picked it up, and held it toward deceased, and asked him what he would have to drink; deceased replied that he would take gin, and then the report of the revolver was heard; that defendant held the revolver in his hand when it went off; that deceased threw up his hands, and fell backward when shot; that that was the only shot fired at that time. The bullet was taken from deceased's body, and introduced in evidence. Defendant offered evidence tending to show previous good reputation for peaceableness and quietness in the community in which he lived. Defendant was a witness in his own behalf, and was examined and cross-examined at great length. Except as to the fact of having taken O'Brien's revolver, and that he had shot the deceased, defendant's testimony was not materially different from that of the colored man. It appears also from his evidence that, some time prior to the shooting of Scott, all of the parties had been firing the revolver, and that it was out of repair. Sometimes it would go off, and at other times it would not; that defendant and O'Brien tried to fix it. Many other facts were elicited, and from all of them it seems reasonably certain that the facts touching the shooting as detailed by the colored man are correct. The location of the wound, its appearance as indicating the direction from which the ball came, the situation of defendant, and other facts, all point to the unmistakable conclusion that defendant fired the fatal shot.

The theory of the defense seems to be that the shooting was accidental. As we have said, it seems clear that defendant shot the deceased with O'Brien's revolver. He knew the revolver was out of order. He knew it was likely to go off, and if, under such circumstances, he pointed it at deceased, and discharged it, even accidentally, and shot deceased, from the effects of which he died, defendant's act would be criminal, even though he may not have intended to discharge the weapon. It is said deceased and defendant were friends. That fact, if it be a fact, is not material, in view of the verdict of manslaughter. We need not dwell upon the facts. We think the verdict was fully warranted by the evidence.

II. Error is assigned on the ruling of the court permitting Dr. Parry to give his opinion as to the cause of Scott's death. Dr. Parry attended Scott the evening of the shooting, and after he was shot. He assisted in conducting the *post mortem* examination of the body, and was properly permitted to give his opinion as to the cause of death. *State v. Porter*, 34 Iowa, 131. Furthermore, there is no claim in this record that Scott came to his death in any other manner or from any other cause than this pistol-shot wound.

III. It is said that the court erred in sustaining certain objections to questions propounded to the witness Lizzie Meyers. It seems that the state's witness Bolden had told McCoy, one of the defendant's counsel, in his office, in presence of Lizzie Myers, that he thought the shooting was accidental; and Bolden so admitted upon the witness stand, but claimed he said he thought it was an accident, until somebody said, "The damned nigger had shot him." Defendant sought to show by the witness Myers that nothing was said by Bolden about the "damned nigger" having shot deceased; and

the court ruled it out as incompetent, immaterial, and irrelevant. Now, we do not see how it was material as to just when Bolden ceased to think the shooting was accidental. The witness had admitted upon the stand that he had thought the shooting accidental. There was no error in the ruling.

IV. The point is stated, but not argued, that there was no evidence identifying the bullet that was taken from deceased's neck, and hence it was error to admit it. Dr. Muir testified that he saw the bullet that was taken from the wound; that he took it out himself, and put it in his pocket; that he had it in his possession when he went before the grand jury to testify; and that he left it with the grand jury. He identified the bullet offered in evidence as being the same one he took from Scott's body, and said its condition was the same except the identification marks. There was no error in admitting the bullet.

V. One Seaton testified for defendant as to his reputation for morality and peaceableness. On cross-examination he was asked: "You didn't hear about his getting into a fight at Rose Hill, and cleaning out a boarding house, a whole housefull?" "You didn't hear anything about him threatening to knife and shoot a man at What Cheer?" Both questions were answered in the negative. Witness Gordon, who also testified as to defendant's good reputation for peaceableness, was asked in cross-examination, "He never drank anything either, did he?" and answered that he had never seen him drink. These questions were properly objected to, and the objections overruled. Counsel for defendant contend that asking such questions is such misconduct on part of the prosecutor as entitles the defendant to a new trial. It may be conceded that the questions were improper, as call-

ing for particular instances of difficulties had with other persons; but, in view of the fact that no improper testimony was in fact given, can the fact that improper questions were asked be said to have prejudiced the defendant? In *State v. Gordon*, 3 Iowa, 415, such questions were asked, but no answers set out in the record, but the record did show that the "state was permitted to go into particular instances of difficulties by the person with others," it was held that it sufficiently appeared that the witness "testified of and detailed matters which ought not to be inquired of, and ought not to be considered by the jury in finding their verdict." In *State v. Sterrett*, 71 Iowa, 387, evidence was introduced "tending to prove that he [defendant] had previously been involved in personal difficulties, and that on one occasion he had threatened to shoot a person;" and it was held reversible error. In *State v. McGee*, 81 Iowa, 17, it was held that when, on cross-examination, such questions were improperly permitted to be asked, it was error, but without prejudice, as the answers were favorable to the defendant. In the case at bar the improper questions were in each case answered in the negative. Nothing was elicited as a result of the questions which could possibly work to defendant's detriment. If the answers can be said to have had any effect at all, they were in defendant's favor. We do not think it should be held that merely stating such questions, without more, constitutes prejudicial error.

VI. Error is assigned on the action of the court refusing to permit the introduction of the revolver in evidence. The revolver sought to be introduced was not identified as the revolver which defendant had at the time of the shooting. No one who was present at that time was called on to identify the instrument. The ruling was correct.

VII.   It is said that in his opening statement to
the jury, and in his closing argument, the county
attorney was guilty of such unprofessional conduct as
to require a reversal of this case.   In his opening
address the prosecutor, in substance, informed the
jury that the state would show by the dying declara-
tion of the deceased that defendant shot deceased;
that deceased told his brother who had shot him.
The dying declarations were excluded by the
court, because the state failed to show that they
were made when deceased believed he would soon die.
We discover no error in these opening remarks.   The
prosecutor was not bound to assume that he would not
be able to establish the dying declarations.   There is
nothing tending to show that in this respect he acted
in bad faith, towards counsel or the court.   If he
had good reasons to believe that the dying declara-
tions were admissible, he cannot be charged with mis-
conduct in stating what, in his judgment, they would
show; nor is he guilty of misconduct in commenting
upon such declarations, from the fact that he failed to
show such facts, as, in the judgment of the court, were
necessary to be established in order to admit such
declarations in evidence.   A public prosecutor must
be allowed some latitude in such matters.   His con-
duct is not to be judged only by the fact that evidence
which he promises to produce may on the trial be
objected to and excluded, but rather from the stand-
point of what he in good faith might reasonably expect
to prove.   We cannot review all of the facts touching
this complaint.   It is sufficient to say that they may
well have justified the prosecutor in believing that he
would be able to satisfy the court that the declarations
were admissible.   That he failed so to do in no way

reflects upon his motives or conduct, so long as there is nothing to show any bad faith on his part. As to the statement made by deceased to his brother as to who shot him, no objection was made to it on the trial when evidence of it was in fact introduced.

As to the closing argument of the prosecutor, objection is made to his statement that the defendant said that the "damned nigger" shot Scott. It is true defendant denied saying that, and it is also true that there is no evidence as to who did use that language. Still we cannot say that it was error for the county attorney to draw this inference from all of the facts in evidence. He is not bound to accept the defendant's statement as true. He has a right, within reasonable limits, to draw his own deductions as to facts from other admitted or proven facts. Objection is made to this statement: "And just bear in mind, I tell you, gentlemen, there has been many a man convicted on evidence not half so strong; and just bear in mind that a part of this testimony in this case is buried under ground;" also, to the statement that defendant "fixed the revolver for some purpose," and that he fixed it "so that it would be sure and go off;" and to the fact that Scott was lying in his grave, and "cannot tell his side of the story." These and other like statements in the argument are much complained of. We discover no misconduct in referring to them. Some of them, as appears from the record, were made in response to statements of defendant's counsel. There was no attempted statement of the facts which counsel alleged were buried in the grave with Scott. The evidence shows that, prior to the shooting, defendant and O'Brien had tried to fix the revolver; and the conclusion which the county attorney deduces therefrom that the defendant fixed it for some purpose, so it

would be sure to go off, if not correct, was at least not unwarranted. Why should it be held to be misconduct for a prosecutor to refer to the fact that Scott was dead, that he could not tell his side of the story? That was a fact known to every one concerned in the trial, and, so long as the facts and circumstances known to the dead man were not stated or commented upon, there was no error.

We have read the argument in full, and, when viewed in the light of facts established upon the trial, it is clear that in no respect was the conduct of the prosecutor such as to justify us in reversing this case. We would not relax the rule requiring counsel to confine their arguments to the record; but, as we have said, inferences of facts, from facts and circumstances actually shown, are permissible, and unless such right is abused, or it is shown that the prosecutor has acted in bad faith, or has intentionally violated the rules applicable to arguments to the jury, and that such acts have prejudiced the defendant, we should not interfere. In this case we discover no unprofessional conduct. The comments made were legitimate and within proper bounds.

VIII. It is urged that none of the ingredients of murder in the second degree are to be found in this record; hence it was error for the court to instruct with reference thereto. In this counsel are, we think, in error. There was evidence showing that defendant deliberately pointed a loaded revolver at Scott, that it was discharged; that, as a result, Scott was killed. In the absence of evidence to the contrary, the law presumes that one intends the natural consequences of his acts. It became a question, then, for the jury, as to whether the defendant in fact intended to shoot Scott, or whether the shooting was accidental.

IX.   Error is assigned as to the giving of certain instructions because the jury were not told therein that, before they could find the defendant guilty, they must be satisfied of his guilt beyond a reasonable doubt.   It is not practicable for a trial court to state all the law governing a case in each and every instruction given.   In several of the instructions the attention of the jury was called to the fact that, to convict defendant, they must be satisfied of his guilt beyond a reasonable doubt, and the jury was fully instructed as to what in law was a reasonable doubt.   Taking them altogether, they were sufficient, and correctly announce the law in this respect.

X.   It is said that the instruction relating to the peaceable character of defendant was erroneous.   Counsel fail to suggest even wherein it does not lay down the correct rule.   Reading the entire instruction, we think it is unobjectionable.

Lastly, it is urged that the court erred in not instructing the jury that they might find the defendant guilty of any of the grades of the crime charged below manslaughter.   We do not think the record warranted such instructions.   Defendant was either guilty of murder or manslaughter, or not guilty. Such being the case, it was not error to fail to instruct so as to include crimes of a lower grade than manslaughter.   *State v. Cole,* 63 Iowa, 695.

Certain rulings of the court touching the admission of testimony are complained of.   We think it affirmatively appears that the defendant was not prejudiced thereby, and that, upon the entire record, there is no ground for disturbing the judgment of the district court.—*Affirmed.*