STATE OF IOWA, Appellee, v. L. J. ROWELL, Appellant.

CRIMINAL LAW: Trial—Objections—Sufficiency. On cross-examina-
1. tion of a witness testifying to good character, an objection ''that inquiry was improperly allowed to go into a time subsequent to the time asked about on direct examination'' does not raise the objection ''that evidence as to good reputation does not warrant a cross-examination that goes into particular facts''.

WITNESSES: Character Witness—Cross-examination. A witness
2 who testifies to the good character of the defendant ''prior to the last three years, or since he got into financial difficulties'', may, on cross-examination, testify ''that the talk on reputation has been unfavorable for the last two or three years''.

WITNESSES: Character Witness—Cross-examination. A question,
3, 5, 7 on cross-examination of a witness to the good character of defendant, analyzed, and *held* not to involve an inquiry ''about a time subsequent to the time asked about on direct examination''.

CRIMINAL LAW: Appeal and Error—Review—Harmless Error.
4 Even though a question, on the cross-examination of a witness testifying to good character, be conceded as calling for an inquiry about a time subsequent to that called for on direct, yet no prejudice was suffered by defendant when the witness answered that the reputation of defendant remained good.

WITNESSES: Character Witness—Cross Examination.
3, 5, 7.

WITNESSES: Character Witness—Cross-examination. A statement by
6 a witness, on redirect, defining and limiting the time *to which his cross-examination was addressed,* concludes nothing.

**WITNESSES:** Character Witness—Cross-examination.
3, 5, 7.

**WITNESSES:** Character Witness — Cross-examination — Particular
8 'Transactions—Evidence and Rumor Distinguished. It is compe-
tent, on cross-examination of defendant's good character witness,
to ask him if there have not been *rumors* or *reports* in the com-
munity as to defendant's bad character with reference to particu-
lar transactions; it is not competent on such cross-examination to
draw out *evidence of the truth* of such particular transactions.

**CRIMINAL LAW:** Evidence—Character of Accused—Reputation Post
9 Litem Motam. All testimony touching the general reputation of
a defendant, founded on opinion expressed *post litem motam,* is
inadmissible.

DEEMER, C. J., dissents.

**WITNESSES:** Character Witness — Cross-examination — Particular
10 Transactions. The state may not be permitted to confront the de-
fendant with a Pandora's box of specific indictments under cover
of cross-examination of defendant's good character witnesses. In
other words, the existence of substantive single transactions may
not be elicited on the cross-examination of such a witness.

PRINCIPLE APPLIED: Defendant was on trial for embezzle-
ment. Witnesses testified that defendant's reputation for honesty
was good. On cross-examination, the fact was drawn out that, on
numerous occasions, the defendant ''made repeated promises to
pay up this indebtedness, fixing dates to do so, and failed to com-
ply''; also that one witness represented a client with a claim
against defendant, and then heard and learned that defendant
''was many times giving the source from which he was going to
get money to pay up his matters, and that on looking up such
statements it would be learned that defendant had no such
source''. Witness then testified that he did not consider such
methods of defendant reconcilable with honesty. *Held,* error.

**WITNESSES:** Character Witness—Cross-examination—Opinion as to
11 Undisclosed Transactions. A witness testifying that defendant's
reputation was good may be asked on cross-examination whether
he has not *heard* that defendant has done certain things described,
and, upon an affirmative answer, may be asked whether he regards
such dealings as honest. *But this does not permit the prosecutor
to draw from the witness his opinion as to whether certain undis-
closed transactions were honest.*

PRINCIPLE APPLIED: A witness, who had testified that defendant's reputation was good, admitted on cross-examination that he had heard of the defendant's "dealings" with certain named persons. There was no evidence in any form as to what these dealings were. Witness was, nevertheless, asked and permitted to give his opinion as to whether he considered such dealings honest. *Held*, error, because necessarily discrediting the direct testimony of the witness without power in the jury to determine whether the facts justified such discredit.

**WITNESSES: Character Witness—Cross-examination—Assumption of**
**12 Facts.** The cross-examination of a character witness must not be permitted to become a "slaughter house of reputations". A prosecutor will not be permitted to practically destroy the testimony given by the witness on direct by embodying in a question on cross-examination what he claims the defendant has done in a particular instance, and then to ask the witness to give his opinion as to the honesty of such assumed conduct.

PRINCIPLE APPLIED: A witness testified to the good reputation of the defendant on trial for embezzlement. On cross-examination, he stated that he had heard that defendant had borrowed money of Mrs. Reed, and knew her condition and would consider her "rather weak" in protecting herself in a business deal. Without more, he was then asked this question:
"Q. Would you say that a lawyer that would borrow all the money she had in the world (earned) over the washtub, was honest and fair, when she relied on him in the transaction, and when he was insolvent when he borrowed it?
"A. I wouldn't do it."
*Held* wholly erroneous and prejudicial, because permitting the questioner to manufacture his own foundation, and because beyond all permissible range of cross-examination.

**EMBEZZLEMENT: Verdict of Guilt—Evidence—Sufficiency.** Evi-
**13 dence** reviewed and *held* to sustain a conviction of embezzlement.

*Appeal from Cedar District Court.*—HON. W. N. TREICHLER, Judge.

TUESDAY, OCTOBER 19, 1915.

THE defendant appeals from a conviction of larceny by embezzlement.—*Reversed.*

*J. C. France,* for appellant.

*George Cosson*, Attorney General, *John Fletcher*, Assistant Attorney General, *D. D. McGillivray*, County Attorney, and *C. J. Lynch*, for appellee.

SALINGER, J.—I. We eliminate from consideration the objection lodged against the cross-examination of the witnesses Moore and Grassfield, because no objection was interposed to their testimony.

The witness Moffet was asked whether he had ever heard of defendant's "dealings with Mrs. French as a subject or question up to this time" (November, 1913). He answered that he had, but had never heard the particulars. It was probably done by separate answer, but as the record is printed, it appears he added to this the statement that he "heard of the deal with John Smyth prior to November, 1913." He was then asked whether he thought that was an honest and fair deal and answered that he did not think so. Here, again, the record makes him volunteer the additional statement that he "heard of defendant's dealings with reference to Mrs. Reed". It is urged in argument that here was violated the rule that evidence as to general reputation does not warrant a cross-examination that goes into particular facts. We must decline to pass upon this argument, because the only objection interposed and ruled on was that inquiry was improperly allowed to go into a time subsequent to the time asked about on direct examination.

1. CRIMINAL LAW: trial: objections: sufficiency.

II. The witness Peters spoke to reputation "prior to the last three years or since he got into financial difficulties". Over the objection "for the same reasons as before and incompetent, irrelevant, immaterial and not cross-examination", he was allowed to say that the talk on reputation has been unfavorable "for the last two or three years". We do not know exactly what the objection "for the same reasons as before" is intended to present. There is no preceding objection to the

2. WITNESSES: character witness: cross-examination.

testimony of this witness. But giving to it all reasonable breadth, it is not error to permit one who testifies to a state of things "prior to the last three years" to say, on cross-examination, that the status had changed during or "for the last two or three years".

III. The witness Moffet stated on direct what, in his opinion, was the reputation of defendant, "prior to the time that this charge was made against him". We construe this

3. WITNESSES: character witness: cross-examination.

to refer to the return of the indictment, November 6, 1913. Over the objection that it involved an inquiry "about a time subsequent to the time asked about on direct examination", this witness was permitted to say he never heard the honesty and integrity of this defendant questioned "up

4. CRIMINAL LAW: appeal and error: review: harmless error.

to November, 1913". All time up to November, 1913, is earlier than and not subsequent to November 6, 1913. Moreover, as the answer was that the reputation of defendant remained good, it appears affirmatively that no prejudice resulted.

IV. The witness Geiger fixes the time covered by his direct testimony on reputation as "prior to the time of the difficulties that have grown out of the management or claimed

5. WITNESSES: character witness: cross-examination.

management of the Hillyer estate". On cross-examination, and over the objection that its inquiry was wholly as to matters "that have come up since the time fixed and inquired about by the defendant", witness was allowed to speak, concerning a period, "prior to 1913". It is not easy to tell from this record when "the difficulties that have grown out of the management or claimed management of the Hillyer estate" did begin. The best obtainable seems to be that, "later than November, 1912", one of the bondsmen of the defendant had certain negotiations and did that which perhaps constituted the starting of difficulties. Where the period in which something occurred is limited to earlier than subsequent to Novem-

ber, 1912, cross-examination which covers "prior to 1913" does not deal "wholly with matters that have come up since" the time inquired about on direct; for all time earlier than after November, 1912, is also time "prior to 1913".

A statement by a witness, on redirect, defining and limiting the time to which his cross-examination was addressed, concludes nothing. When it becomes a question whether such examination deals with a period not involved

6. WITNESSES: character witness: cross-examination.

in the direct examination, it is for the record, rather than the opinion of the examined witness, to establish what period of time is covered by his cross-examination. Therefore, no importance can be attached to the redirect testimony of Mr. Geiger, that the time inquired about of him by counsel for the state on cross-examination "was since these financial difficulties have arisen with Mr. Rowell". And so of a like definition made on cross-examination.

V. The witness Kepler testified, on direct, as to the reputation of defendant "prior to the time that the present charges were brought against him". Over the objection that same was an inquiry as to a time later than the

7. WITNESSES: character witness: cross-examination.

one covered by the direct examination, he was interrogated as to reputation "some time the latter part of 1912". As said, we think it fair construction that the witness meant the return of the indictment, when he spoke of "charges brought". It was, returned on November 6, 1913. As the time covered by this cross-examination is one earlier than all time before November 6, 1913, it follows that the objection aforesaid is not well taken.

So of like cross-examination of Moffet on like direct.

Neither "up to November, 1913", nor "prior to November, 1913", nor "prior to October and November, 1913", is a time subsequent to a time prior to November 6, 1913.

VI. Some evidence was received on cross-examination of general reputation witnesses that they had heard of dealings

inconsistent with good repute.   That of Kepler may be
eliminated; because he answered that he
knew nothing about it and had learned
nothing of it, and knew nothing about defend-
ant's handling of trust funds "even now".
We gather one objection made to this to be
that, while the testimony in chief was, as it
must be, confined to general reputation, this cross-exam-
ination permitted and inquired into particular items of
conduct.  We think it does not seek to show substantive acts
on part of the defendant, and is not an attempt to prove
that general reputation is bad because specific acts of defend-
ant were bad.  It seems to us to be directed instead to whether
it was generally reputed in the community that defendant
had done disreputable things.  This is permissible because it
bears directly on the value of the testimony in chief.  That
proof of isolated instances of evil conduct may not negative
that their doer is in good repute is no reason why the jury
may not be advised that the witness who said the general
reputation of the defendant in certain respects was good was
giving such testimony when in fact the community was rife
with reports indicating the contrary.  Such testimony tends
to show either that the witness was unfamiliar with the repu-
tation concerning which he has testified or that his standards
of what constitutes good repute are unsound.  It is one thing
to negative good repute by evil conduct which may have
been unknown to the community in general; quite another to
show that a witness testified to defendant's good repute in a
community when general report in that community was so
strongly condemnatory of defendant as that the witness either
was in ignorance of defendant's reputation or testified in dis-
regard of what he did know.  This distinction has often been
overlooked, but it exists, and has overwhelming support both
in reason and in authority.

   In *State v. Kimes*, 152 Iowa, at 249, we recognize, and
clearly point out, the difference between inquiry into specific

8. WITNESSES:
character wit-
ness: cross-
examination:
particular
transactions:
evidence and
rumor dis-
tinguished.

conduct on cross-examination, and one as to rumors and reports tending to show bad reputation. We hold, and rightly, that, while particular acts must be excluded, showing the existence of such rumors or reports meets the very purpose of cross-examination of a character witness, because "the existence of such rumors or reports would certainly tend to lessen the weight of the witness's testimony as to the defendant's good standing in the community."

It is universally held that, while cross-examination may not go into particular acts of the person whose character is under investigation, the one who deposed to his good reputation may properly be questioned as to his information respecting particular evil acts imputed to that person by repute, and as to specific charges of misconduct made against him. *State v. Roderick,* (Ohio) 14 L. R. A. (N. S.), note beginning with page 739; *State v. Crow,* 107 Mo. 341 (17 S. W. 745); 40 Cyc. 2496. While he may not depose as to the truth of the particular facts, he may be questioned as to such circulating rumors of them as form a part of the general reputation, and help to make up good or bad character. As was said in *Regina v. Wood,* 5 Jur. 225, "the question is not whether the prisoner was guilty of that robbery, but whether he was suspected of having been implicated in it." "The issue is good or bad repute, and to this each party is confined", so far as developing specific acts on cross-examination is concerned, but this does not exclude inquiry into rumors and reports concerning the conduct or particular acts of the party under inquiry. *Moulton v. State,* (Ala.) 6 So. 758, 759.

This may be done to test the conception of the witness as to what is good character, and bears on his credibility or accuracy (40 Cyc. 2496, 2497), and to ascertain the foundation for his opinion, or the data from which he draws his conclusion, and with a view to lessen the effect of his testimony as to general reputation. *Basye v. State,* (Neb.) 63 N. W. 811, 812. According to Judge Cooley in *Annis v. People,*

13 Mich. 511, this is permitted to enable the court, and jury to determine whether the impeaching witness, in fact, knows the general reputation of the other and, if so, whether he has testified truly in regard to it.

VII. The witness Geiger said defendant had a good reputation for honesty prior to a time which we find was November, 1912. Over the objection that it was improper cross-examination, and relates to a time not inquired about in his direct, he was permitted to give occurrences and reports claimed to be inconsistent with such reputation, happening and circulating "from the spring of 1912, on". While it is true that all time between November, 1912, up to the return of the indictment, is included in the time "from the spring of 1912, on", the latter period includes, as well, the time subsequent to the finding of the indictment, November 6, 1913, and up to the time when the witness was speaking, and all time after the commission of the alleged crime, up to the moment at which the witness was testifying. We think this was error.

9. CRIMINAL LAW: evidence: character of accused: reputation *post litem motam.*

In *Reid v. Reid,* 17 N. J. Eq. 101, 103, it is said:

"No rule is better settled or founded on clearer principles than that which excludes all testimony touching reputation founded on opinion expressed *post litem motam.* Not only should the character of the witness be founded on reputation previously existing, but a stranger sent by a party to the neighborhood of the witness to learn his character will not be permitted to testify as to the result of his inquiries."

Testimony that a witness had learned since the arrest of the defendant that his reputation before arrest was bad is inadmissible. *People v. Fong Ching* (Cal.), 20 Pac. 396.

In *Griffith v. State* (Ala.), 8 So., at 814, it is held that a witness, to be competent to testify to the general character of defendant, must possess the means of knowing what it is

before the commission of the offense with which the defendant is charged; and that a stranger sent to the place of his residence after the offense had been committed, and for the purpose of learning his general character prior thereto, is incompetent to testify to such character. This is followed in *Buchanan v. State* (Ala.), 25 So. 1024. This holding is sustained in 3 Ency. of Evidence, at page 42. And see *Reid's* case, 17 N. J. Eq. 101.

We do not overlook *Mask v. State,* 36 Miss. 77, where this rule is held to apply only to the principal controversy, and not to collateral and incidental questions arising in the progress of the trial,—nor *Fisher v. Conway,* 21 Kans., at 25. But it will be noted that both these cases involve attack upon the veracity of a witness testifying on the hearing. That exhibits a radically different situation from one arising upon attack upon the general reputation of a defendant. As to the witness whose standing for veracity is assailed, the true inquiry is, as is said in *Fisher's* case, *supra,* "What is his reputation today when he is testifying? not, what has it been in the past?" The theory of reputation evidence concerning the defendant is that, before he was accused of a stated crime, his neighbors believed him incapable of committing such an one.

The reputation of the defendant will, in all probability, be materially affected for the worse by being placed upon trial on charge of some serious offense. To permit evidence that he was of good repute before to be met by what people say of him since permits evidence that his previous life makes it unlikely that he is guilty of what is charged to be met by proving that he has been accused. In fewer words, testimony that one has so lived as to make it unlikely that he would commit murder would, on this theory, be rebuttable by a showing that he has been indicted for murder. It is apparent why this may not be done, though it is competent to show that a witness testifying on a trial is by then common repute untruthful.

VIII. The witness Geiger was asked whether he had not

heard generally in the community "from the spring of 1912 on" that defendant "was making repeated promises to pay up this indebtedness, fixing dates to do so, failing to comply with them, and that this occurred thirty or forty times or more". Objection was overruled that this was not cross-examination. The witness answered, "Very many times." He had said that he once represented a client in matters involved in the guardianship of defendant. He was then asked this: "And then you heard and 'learned' (in his connection with said business of the client) in the community that he was giving the source from which he was going to get money to pay up these matters, and that the matter would be checked up and found that he had no such source to get it, didn't you?" To this it was also objected that it is not cross-examination. On being overruled, the witness answered, "Very often." Then, over like objection, the question—"Did you think the method he followed there, the way in which he fooled these people, was reconcilable with honesty, integrity and good purpose?" and he answered, "I do not."

10. WITNESSES: character witness: cross-examination: particular transactions.

This seems to permit not alone what the witness had heard, but, as well, what he had "learned" in discharging a professional duty, i. e., ascertained on this specific, distinct and isolated head. It is equivalent to asking, What did you ascertain, while representing a client adverse to defendant, as to defendant's making wilfully false promises to pay his debts?

The objection made below does not raise the question whether evidence that one makes promises to pay debts from specified sources of revenue, and then fails wilfully to keep them, or is unable to do so, is competent to prove he has a poor reputation for truth, integrity and honesty of methods, and has tendencies through which men become embezzlers. But the objection made does raise the question whether the existence of substantive single facts may be elicited on cross-

examination of one who has confined himself to general repu-
tation. We agree with the prosecution that the exclusion of
such single acts has often been ruled under conditions which
make such holding of no value as an authority here. We
think some of the cases relied on by appellant avail him
nothing. *State v. Sterrett*, 71 Iowa 386, merely condemns the
introduction of particular facts by the state's rebuttal. And
so of *State v. Thompson*, 127 Iowa 440. And of *State v.
Grinden*, 91 Iowa 505, which, in addition, is not in point
because it really turns upon the holding that one who is not
acquainted with the reputation of the defendant should not
be allowed to testify concerning it. *State v. Tippet*, 94 Iowa
646, concedes, by way of argument, that particular facts may
not be gone into; but the case turns upon determining that
the mere asking of the question, where no answer is given,
is not reversible misconduct. But the fact that these cases do
not aid the defendant does not prove that what was done here
is permissible cross-examination.

The admission of such testimony is squarely condemned
in *Gordon v. State*, 3 Iowa 410, 415, where it was elicited on
cross-examination, and it is expressly ruled that it is not the
less objectionable because drawn out on cross-examination.
Testimony of this character elicited in cross-examination is
again condemned in *State v. McGee*, 81 Iowa 17. We cannot
agree with the contention of the state that these have been
overruled or in any way affected by *State v. Kimes*, 152 Iowa,
at 249. All it does, as clearly appears elsewhere in this
opinion, is to recognize the distinction between proof of par-
ticular facts, and testimony that the witness knew or could
know of the currency of ill report. It merely holds, with the
great weight of authority, that the one is and the other is not
admissible.

It is said in *Moulton v. State* (Ala.), 6 So., at 759, that
the defendant may no more be confronted with a Pandora's
box of specific indictments upon cross-examination than upon
any other form of examination. "The objection goes to the

nature of the evidence, and not to the time or mode of its introduction."

According to the *Moulton* case, the only case which holds a contrary view on the admissibility of specific acts or conduct is *State v. Jerome*, 33 Conn. 266, which the Alabama court says is not well considered, and is unsupported by authority, and in which, where the prisoner had put in issue his character for chastity, a witness was permitted to answer, on cross-examination, whether a lewd woman had not been an inmate of his house, as a fact conducing to prove that defendant kept a house of ill fame. And the Supreme Court of Alabama continues that this rule of exclusion is so fully established in England that it was deemed necessary at one time to introduce a single exception to it by statute, which provided that, in rebuttal to evidence of good character, the conviction of the person in inquiry of previous offenses might be shown (*Moulton v. State*, 6 So. 760).

IX. The witness Moffet said he had heard of the defendant's "dealings with Mrs. French as a subject or question up to this time", but that he had never heard the particulars; that he had heard "of the deal with John Smyth"; that he did not think that "this" was an honest and fair deal. He said further that he had heard of defendant's dealings "with reference to Mrs. Reed". To all this, the only objection was that it was objected to "for the same reasons". As there is no preceding objection to the cross-examination of this witness, other than that the inquiry being made concerns a time subsequent to that asked about on cross-examination, and as this objection is manifestly not applicable to the aforesaid answers, we treat these as having been made without objection. Thereupon, the witness was asked, "Did you think that this dealing with Mrs. Reed was capable of being construed as being an honest and just dealing, as an honest man would have with a client and a woman?" This was objected to as being improper cross-examination,

11. WITNESSES: character witness: cross-examination: opinion as to undisclosed transactions.

and the objection overruled. The witness answered that he had never heard much about the deal, except that the money was borrowed of Mrs. Reed, and that witness knew her condition. Being then asked whether he knew that Mrs. Reed was a woman that couldn't protect herself in a business deal, he was allowed to say, over the objection that it was incompetent, irrelevant and immaterial, that he would think "she would be rather weak". He was next asked: "Would you say that a lawyer that would borrow all the money she had in the world over the washtub was honest and fair when she relied on him in the transaction, and when he was insolvent when he borrowed it?" Over the objection that this was not proper cross-examination and was incompetent, irrelevant and immaterial, the witness answered: "I wouldn't do it."

A similar examination of the witness Kepler was made; but that may be eliminated; because he answered, in effect, that he knew nothing about the matter, and knew nothing about defendant's methods of handling trust funds, "even now".

The witness Geiger said he had heard of the defendant's dealings with Pace and with Dallas and Louise French. Over the objection that it is improper cross-examination, and is incompetent, irrelevant and immaterial, he was permitted to say that he did not think "these dealings" could be reconciled with honesty, good methods and integrity. The testimony admitted shows merely that the witness had heard of "dealings" of defendant with Smyth, Pace, Dallas and French. There is no evidence in any form as to what these dealings, in fact, were, or even what they were reputed to have been.

Upon this, as the only basis, the witnesses were permitted to say that these dealings were not in harmony with that general good reputation for honesty, integrity, fair dealing, and practicing good business methods which these witnesses had originally said defendant had.

It seems to us that, even on cross-examination, a witness may not say that dealings of whose nature there is no evi-

dence are of such character as that no man of good repute for honesty would engage in them. In the guise of cross-examination of statements as to general reputation, the witness thus gives his opinion on a hypothetical case without indicating in any way upon what facts, or even claimed facts, this opinion rests. It is competent to ask such witness whether he has not heard that defendant has done certain things described and, upon an answer in the affirmative, to inquire whether he regards such dealings as honest. This bears relevantly upon the weight to be given his statement on direct that defendant was of general good repute for honesty. But this leaves it to the jury to determine what the witness has heard and, in spite of his opinion as to its quality, whether the report heard by the witness does weaken his original statement concerning the general repute of defendant. It is in the fact that the examination now under consideration took this from the jury, and that thereby the testimony as to the general reputation of defendant was weakened by the opinion of his witness as to the quality of undisclosed transactions, that the vice of the permitted examination lies.

## 2.

The questions permitted assume that defendant borrowed all the money which a weak woman like Mrs. Reed had in the world; that she had earned this money over the washtub; **12. WITNESSES: character witness: cross-examination: assumption of facts.** that she relied on defendant in the transaction with her, and that he was insolvent when he borrowed this money of her. This is as vicious as the other. In the first, the jury does not know upon what the witness bases his opinion. In the second, it is told by the prosecutor that defendant has done, or is generally reputed to have done, certain things, and is then left at liberty to find that the testimony as to general good repute should have no effect, or lessened effect, because the witness thinks that the things asserted by the

examiner are incompatible with a deserved or existing good general reputation.

This goes beyond all license that in reason should be extended the cross-examiner. As the Supreme Court of Louisiana says, in *State v. Caron,* 42 So. at 964, there must be a limit to the exercise of the right, else it might "become a slaughter house of reputations".

Cross-examination has its added privileges and, as well, some specific limitations. The witness may be led. Effort to break him down may be so subtle and indirect as that a corrupt witness may not be warned by plain questions to fortify falsehoods; and wide judicial discretion is lodged in the trial court as to the mere method of exercising the proper functions of cross-examination. But from none of this does it follow that the examiner may manufacture his foundation and then proceed upon the foundation thus laid. "The objection goes to the nature of the evidence and not to the time or mode of its introduction"—*Moulton's* case (Ala.) 6 So. at 759—a remark made as to testimony elicited on cross-examination. And in the case of *Gordon,* 3 Iowa 410, we hold that procuring improper testimony is not saved by the fact that the cross-examination was the means of eliciting it.

X. It may not be doubted that one cannot be rightfully convicted of embezzlement without sufficient proof of fraudulent intent to convert. *State v. Ames,* 119 Iowa 680; *White v. Text Book Co.,* 144 Iowa 92. It is true that

**13. EMBEZZLE-MENT: verdict of guilt: evidence: sufficiency.** mere proof of conversion does not establish embezzlement, beyond reasonable doubt (*State v. Wallick,* 87 Iowa 369), and that in some instances evidence of like transactions are inadmissible to establish criminal intent. *State v. Carmean,* 126 Iowa 291. On the other hand, and of necessity, this intent can rarely be proved by direct evidence, and may, therefore, be sustained circumstantially. *State v. Schumacher,* 162 Iowa, at 236. But all this serves no useful purpose. It must suffice that we state, in a quite general way, that we find the evidence to be

in such sense sufficient as that we may not interfere with the verdict on the challenge that it is not warranted by the evidence. Where we reverse, and yet find that the assignment against the support of the verdict is not well taken, it is better practice not to elaborate upon that holding. To do so is of very doubtful, if any, value to the state, and by being misconstrued into an endorsement of the weight of testimony for the prosecution, it may prove a handicap to the defendant on retrial. We find from the record the jury could believe, upon evidence that was properly adduced, that this defendant deliberately mingled trust funds with his own, speculated with them, did all this when his property consisted largely of speculative equities, and when he had no reasonable ground to believe that he could repay his ward on demand; that the jury could find from the record of judgments and foreclosures exhibited that defendant had no reasonable ground for believing he could make payment, on demand; could find that he deliberately falsified reports made to the court, in a way calculated and intended to hide that he was converting the trust funds to his own use. We must not be understood as saying that the evidence establishes, or even tends to establish, all or any of these things. All we hold is that we cannot say the jury was unauthorized to so find. See *Edmondson v. State* (Neb.), 132 N. W. 527; *United States v. Camp* (Idaho), 10 Pac. 226.

For the errors pointed out in divisions VII, VIII and IX, there must be a reversal.—*Reversed and Remanded.*

DEEMER, C. J., concurs as to all but Division 7. LADD and GAYNOR, JJ., concur.

DEEMER, C. J.—I do not concur in the rule announced in the seventh paragraph of the opinion. I think the cross-examination of Geiger therein referred to was proper—in any event, nonprejudicial.