THE STATE OF IOWA, Appellee, v. IRWIN McINTIRE, Appellant.

| 89 | 139 |
| 121 | 115 |
| 89 | 139 |
| 131 | 9 |
| 89 | 139 |
| .35 | .730 |

1. Seduction: TIME: CONFLICT OF EVIDENCE: EFFECT. Where in a prosecution for seduction it was shown, by the testimony of several witnesses, that the parties were not together on the day named by the prosecutrix as the time of the commission of the act, but the evidence did not indicate that it must have been on said day or not at all, nor that if not on such day that the testimony of the prosecutrix was entirely unworthy of credit, *held*, that there was not such a failure of evidence as would warrant the court in setting aside a verdict against the defendant.

2. ————: CHASTITY OF PROSECUTING WITNESS: EVIDENCE. The fact that the prosecuting witness in such case allowed her male friends, when escorting her home on the first occasion, to hug and kiss her, is not conclusive evidence of unchastity.

3. ————: INSTRUCTIONS TO JURY. The refusal of the district court, upon request, to give instructions to the jury embodying correct propositions of law, and applicable to the case, is not erroneous where such instructions are substantially embodied in the charge of the court.

4. ————: PERSUASIVE ARTS: INSTRUCTIONS TO JURY. It appearing from the evidence that the defendant hugged and kissed the prosecutrix, told her that there would be no harm in the act, that other girls had yielded to him without the promise of marriage, and that he would marry her whether or not anything happened to her, and the prosecutrix having testified that it was because of this, and the defendant's promise to marry her, that she submitted to him, *held*, that the evidence warranted an instruction to the jury that they should find the defendant guilty if they found that he induced her to yield to him by a promise of marriage "or by the use of other seductive arts,"

5. **New Trial**: MISCONDUCT OF COUNSEL IN EXAMINATION OF WITNESSES. In a criminal prosecution for seduction the defendant's brother-in-law having testified in behalf of the defendant, was questioned on cross-examination by the state's attorney as to his relation to the defendant, and was then asked, "You made him marry her, didn't you?" to which question an objection was sustained. *Held*, that while the question was inexcusable, yet that the question, as to whether prejudice resulted therefrom, was for the district court, and that the cause would not be reversed after the refusal of that court to grant a new trial, when its discretion was fairly exercised.

*Appeal from Monroe District Court.*—HON. H. C. TRAVERSE, Judge.

MONDAY, OCTOBER 9, 1893.

INDICTMENT for seduction. There was a verdict of guilty, and a judgment thereon, from which the defendant appeals.—*Affirmed.*

*J. C. Mabry, Ed. Morrison,* and *D. H. Anderson,* for appellant.

*Fred Townsend, McCarhan & Richmond, John Y. Stone,* Attorney General, and *Thos. A. Cheshire,* for the State.

GRANGER, J.—There is a claim that the verdict has not sufficient support in the testimony. We think it

1. Seduction: time: conflict of evidence: effect.

such as to forbid our interference. In fact, it has stronger support than many cases that have been affirmed in this court. That the defendant had sexual intercourse with the prosecutrix is hardly a doubtful question. The principal contention as to facts is as to the time of the intercourse and the previous chastity of the prosecutrix. Great importance is attached by the appellant, in argument, to the fact that her testimony fixed, as the time of the intercourse, the twenty-seventh day of August, while the testimony of several other witnesses shows that the parties were not together on that day.

Of course, the particular time of the intercourse may be important in determining the fact of seduction, that is, the truth of the statements made by the prosecutrix, but it is not essential to sustain a conviction, and the court so instructed the jury. The testimony of the prosecutrix shows a continued courtship between herself and the defendant of some months, covering a period both before and after the twenty-seventh day of August, which she quite positively fixes as the day of their intercourse. Taking her testimony together, it does not appear that she is absolutely positive as to the exact time, but it is said by her that it was in August. The record is by no means a showing that the act was on that particular day, or not at all; nor does it present a state of facts showing that, if it was not on that particular date, her testimony is entirely unworthy of credit.

II.   The argument makes quite conspicuous certain acts of the prosecutrix as indicating a want of

2. ——: chastity of prosecuting witness: evidence.

chastity on her part, and to such an extent, it is urged, as to overcome the finding of the jury.   We do not concur in this view. If we agree with counsel that her acts were indiscreet, or even such as might awaken suspicion, still they do not rise to the importance claimed for them in argument. The testimony shows that at times, when escorted home by a male friend, and on the first occasion, she permitted them to "kiss her good night," and it is said she went so far as to allow them to "hug her." It is for conduct of this character that her unchastity is urged.   We have said that no particular amount or degree of such manners or conversations can be set down as conclusive evidence of an unchaste character. *State v. Andre*, 5 Iowa, 389; *Same v. Hemm*, 82 Iowa, 609.

III.   The defendant asked the following instruction:   "You are instructed that it is natural, and to be

3. ——: instruc-    expected, that the prosecutrix should, as
tion to jury.      far as possible, shield herself, and cast the
blame, if any there was, on the defendant.   You should
not, therefore, put any constrained construction upon·
her language in order to find the defendant guilty.   On
the contrary, as the defendant is entitled to the benefit
of all reasonable doubt there may be as to his guilt, the
language of the prosecutrix should receive no other
construction than its natural and fair meaning may
entitle it to."   The court refused it, and gave the fol-
lowing:   *Second.*   Counsel for defendant claim that in
construing the testimony of the prosecuting witness it
may be assumed that she would naturally desire to
screen herself, and throw the blame on defendant, so
far as she could reasonably do so, and therefore no
strained construction should be given to her words in
order to convict defendant.   You are instructed that
this is true.   But you are also instructed that, should·
you find the prosecuting witness to be a credible wit-
ness, then, in construing her testimony, you should
give her words a fair and reasonable construction."
The import of the instructions is much the same, and
that given was all the defendant could reasonably ask.

IV.   The defendant asked an instruction to the
effect that the state relied "wholly upon an alleged
4. ——: persuasive  promise of marriage as the means of
arts: instruc-
tion to jury.      seduction," and that there could be no
conviction unless such fact was proved.   The court did
give it, but instructed the jury somewhat generally as
to the seductive arts, including a promise of marriage,
and said:   "If you find that he overcame her virtue
and induced her to yield and submit to his embraces by
a promise of marriage, or by the use of other seductive
arts, then, and in that event, you should find the defend-
ant guilty."   The words "or by other seductive arts"
have some support in the evidence.   The prosecutrix,
in her testimony, after saying that he hugged and

kissed her, and told her there would be no harm in the act, that other girls had yielded to him without the promise of marriage to them, and that he would marry her whether or not anything happened to her, said: "It was that and his promise to marry me in two weeks afterwards that I submitted to him." We think there was no error in the action of the court.

V. It appears that the defendant is the husband of a sister of one Huxford, who was a witness for the defendant. On cross examination he was asked if he was not a brother-in-law of the defendant, and he answered that he was. Counsel for the state then asked: "You made him marry her, didn't you?" The court sustained an objection to the question, but it is urged that, even though the answer was excluded, the question was so prejudicial as to warrant a reversal because of misconduct on the trial. What would have been our holding had the district court so held, we should not now determine. It is said that the question "is without excuse or warrant of law," and in that view we entirely concur, and we would gladly aid the district court in any proper measure tending to the suppression of such a practice. We are, however, of the opinion that the question of whether prejudice resulted was for the district court, who, being present, could better know the effect of such conduct, and that we should not reverse the case after its refusal to grant a new trial when its discretion is fairly exercised.

*5. NEW trial: misconduct of counsel in examination of witnesses.*

We discover no prejudicial error in the record, and the judgment is AFFIRMED.