STATE OF IOWA, Appellee, v. WILLIAM McCLAIN et al., Appellants.

**WITNESSES: Cross-Examination in re Alibi.** Cross-examination tend-
1 ing to show the inconsistency of a claim of alibi reviewed, and held proper.

**WITNESSES: Leading Question to Non-English-Speaking Witness.**
2 Large discretion rests in the court to permit leading questions to a witness who speaks the English language with difficulty.

**JURY: Right to Full Panel—Waiver.** The statutory right to demand a *full* panel of all jurors out of which to draw a jury must be made *when the cause is called for trial, and before the jury is called,* or waiver of the right will result. (Sec. 3693, Code, 1897.)

**TRIAL: Formation of Jury.** The *formation* of a jury panel is not a part of the trial.

*Appeal from Woodbury District Court.*—JOHN W. ANDERSON, Judge.

JUNE 22, 1921.

By verdict of the jury and judgment of the court thereon, the defendant was convicted of robbery, and was duly sentenced therefor. He has appealed.—*Affirmed.*

*George C. Yeaman,* for appellants.

*Ben J. Gibson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for appellee.

EVANS, C. J.—I. The evidence on behalf of the State tended to show that the defendant McClain and seven others pretending to act as police officers robbed William Pavluchik and Phelix Veriha on the night of July 9, 1919. The robbery occurred upon a farm a few miles out of Sioux City, which was occupied and farmed by the parties named. The fact that a robbery occurred was proven by indisputable evidence. The defendant denied that he had any part in it, and offered evidence, including his own, tending to show an alibi. This was the nature of his defense. In other words, the disputed fact under the evidence was one of identity.

II. One of the grounds of reversal urged for defendant is that the trial court permitted an improper cross-examination of the defendant as a witness. In support of his alleged alibi, he testified that he was at a certain place on the night of the alleged robbery. There is some doubt in the State's evidence as to whether the robbery occurred on the night of July 8th or July 9th. One witness testified that it was three or four days after July 4th. The

1. WITNESSES: cross-examination *in re* alibi.

manifest tendency of the cross-examination complained of was to discredit the alleged alibi. The evidence for the State not only tended to identify the defendant as one of the robbers, but also to identify one or more of his companions. He denied acquaintance with such alleged companions. Prior to the time of the present trial, the defendant had been convicted of another felonious crime, committed immediately after the time of the alleged robbery, in conjunction with the same persons whose acquaintanceship he denied. He was interrogated on cross-examination as to some of the circumstances testified to by him on his trial for such offense. These circumstances were, on their face, apparently inconsistent with his present story of an alleged alibi. We think that they came fairly within the range of proper cross-examination, and that the trial court did not abuse its discretion in permitting the same.

III. Defendant also complains of certain leading questions permitted by the court to be put to the witness Pavluchik, he being the injured party and the purported prosecuting witness. This witness was a foreigner, and spoke the English language imperfectly. The trial court has a large discretion in such a case, within appropriate limits, to permit so-called leading questions. In the later examination of this witness, an interpreter was used, and with the aid of such interpreter a full examination and cross-examination were had. We discover no abuse of the prerogatives of the trial court at this point.

2. WITNESSES: leading question to non-English-speaking witness.

IV. The question most urgently argued by counsel for appellant pertains to the jury panel and to the method whereby it was made. The trial was had at Sioux City, where several district judges hold court in separate court rooms at the same time. The courthouse contains four court rooms, three of which were in actual use for the trial of cases by three district judges at the time of the trial of the defendant. The fourth room was, at that time, used as an assembly room for jurors, and was used by the district judges severally for miscellaneous business. In advance of the term, a list of 150 names had been drawn for the jury panel. They had all assembled in this particular court room and had all been sworn in the presence of one of the dis-

3. JURY: right to full panel: waiver.

trict judges to answer truthfully all questions touching their qualifications to sit as jurors. It appears also that many of them had been excused from jury service, for reasons not appearing in this record. Approximately 75 of them remained for service. For the purpose of apportioning these to the different court rooms where trials were proceeding, the clerk drew out of the box the names of the appropriate number for each court room, and these appeared in the respective court rooms for service. The number thus sent to each court room in the first instance was from 16 to 20. The names of all such were put into a box in such court room substantially in the manner provided by statute. For the trial of a case, the names of jurors were drawn from such box in the usual manner. It will be seen, however, that such box in any court room did not contain the names of the entire jury panel. The complaint of the defendant is that he was not present at the fourth court room at the time when the 16 or 20 jurors of the panel were allotted to the court room where his trial was held. The argument is that he had a constitutional right to be present at all stages of his trial, and that this allotting of 16 to 20 jurors for use in the court room where his trial was had was a part of his trial.

The question thus raised involves a consideration of Code Sections 3693, 3694, 3695, and 3696, which are as follows:

"3693. When a cause is called for trial, and before drawing the jury, either party may require the names of all the jurors in the panel to be called, and an attachment to be issued against those who are absent, but the court may, in its discretion, wait or not for the return of the attachment.

"3694. The clerk shall prepare separate ballots containing the names of the persons returned as jurors, which shall be folded, each in the same manner, as near as may be, and so that the name thereon shall not be visible, and must deposit them in a box kept for that purpose.

"3695. Before the name of any juror is drawn, the box must be closed and shaken, so as to intermingle the ballots therein, and the clerk shall draw such ballots from the box, without seeing the names written thereon, through the top of the lid thereof.

"3696. If a juror is absent when his name is drawn, or be

set aside or excused from serving on that trial, the ballot containing his name must be folded and returned to the box as soon as the jury is sworn.''

The defendant relies principally upon Sections 3694 and 3695, as being mandatory and intended to secure to him his constitutional right.

We do not think that any constitutional question is involved. The Constitution does not deal with the details of criminal procedure. The particular details set forth in the quoted sections of the statute were not essential to the constitutional rights of the defendant. We shall not deal, therefore, with any constitutional question. If any right of the defendant was violated, it was a statutory right, as defined in such sections. It will be noted from Section 3693 that it confers the right upon either party to a case to demand a call of the names of the entire jury panel. It does not confer the right upon either party to demand that all absentee jurors shall be brought into court before the jury is drawn. The discretion of the court in such a case is expressly reserved in the statute. The same discretion is inferentially reserved in Section 3696, whereby a juror, though drawn, may be excused, and where the absence of a juror, though drawn, is not necessarily effective to delay the trial. In *State v. Gillick,* 7 Iowa 287, a similar statute then in force was held to be directory only, and not mandatory. In *State v. Edgerton,* 100 Iowa 63, a somewhat analogous question was presented, which involved the method of making up the grand jury panel, wherein we held that substantial compliance with the statute was all that was required. In *State v. Gillick,* supra, it was held that the deviation from the statute would not be deemed prejudicial, in the absence of specific objection or request by the complaining defendant at the time. This case is quite controlling of the present case. If the statute under consideration therein was directory, then the sections considered herein must be deemed such. Moreover, the defendant made no complaint of this method of making the jury panel *before* the jury was selected. Without objection, the names were drawn from this jury box for the purpose of the trial of this case. No demand was made that the names of all the panel should be called, nor was any objection made that the jury box contained,

in fact, only a part of the names of the jury panel.  It was only *after* the jury had been selected, and before the taking of evidence had begun, that the objection was raised.  The fair inference of Section 3693 is that the demand for a full panel out of which to draw the names of the trial jurors must be made when the "cause is called for trial, and before drawing the jury."  We deem it clear, therefore, that the objection now urged, whatever its merits, came too late.  The conditions thus imposed by the statute violate no constitutional right possessed by the defendant.  The formation of the jury *panel* is not a part of the trial of the particular case.  If it were,

4. TRIAL: formation of jury. then it is a part of the trial of every case for said term.  Proceedings for the attachment of absent or disobedient jurors, or the recognition of the exemption of jurors, or the discharging of jurors from service for sufficient excuse, are all matters in which the particular litigant has no voice.

Lastly, it is urged that the evidence was wholly insufficient to sustain the conviction.  A careful reading of the evidence satisfies us that this ground of reversal is not tenable.  We find no error, and the judgment below is, accordingly, affirmed.— *Affirmed.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.