STATE OF IOWA, Appellee, v. EMMETT BELL, Appellant.

OCTOBER 16, 1928.

*Anderson &.Perry* and *D. W.. Bates,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, *Frank A. Nichol,* County Attorney, and *Fred D. Everett,* for appellee.

ALBERT, J.—I. The evidence on the part of the State tends to show, among others, the following facts:

One R. E. Canning was a member of the board of supervisors of Monroe County, Iowa, at the time in question. The defendant, Emmett Bell, approached Canning, soliciting the appointment of one Leo Craig as a road patrolman, and said to Canning, "There is $200 in it for you if you appoint him." A second approach of a similar character was made on the following day, the 8th day of February, 1927. Again, on February 12th, defendant approached Canning, and said, "Now if you appoint Leo Craig, I can get you $200;" and Canning said, "Show me the money."

On the trial of the case, Canning, while on the witness stand, was permitted to testify that he told of the transaction of February 7th to Mr. Lanning, a member of the board of supervisors, and also told several others, the county attorney, the sheriff, and the deputy sheriff. As to the alleged transaction of February 8th, he testified that he told the deputy sheriff, Lanning, and the county attorney about the conversation he had with the defendant. As to the transaction of February 12th, on which the indictment is found, the witness was permitted to testify that he told the sheriff and the county attorney.

Canning testified that, on receipt of the money from the defendant, he went to the auditor's office, where there were present Jimmie Bair, Miss Hope, the county auditor, and a man by the name of Humphrey, and said, "I told them to see what Bell had given me to try to get me to appoint a road man."

It is claimed on the part of the defendant that this line of testimony was wholly incompetent, immaterial, and prejudicial. The question is whether or not the State is permitted to thus support or corroborate its own witness by showing that he made prior consistent statements with that which he made on the witness stand. No story told by a witness can be made more probable or more trustworthy by any number of repetitions. Judge Story, in *Ellicott v. Pearl*, 10 Pet. (U. S.), 412, 439, says:

"His testimony under oath is better evidence than his confirmatory declarations not under oath; and the repetition of his assertion does not carry his credibility further, if so far as his oath."

In *State v. Parish*, 79 N. C. 612, it is said:

"It can scarcely be satisfactory to any mind to say that, if a witness testifies to a statement today under oath, it strengthens the statement to prove that he said the same thing yesterday, when not under oath. * * * the idea that the mere repetition of a story gives it any force, or proves its truth is contrary to common observation and experience that a *falsehood* may be repeated as often as the *truth*. Indeed, it has never been supposed by any writer or judge that the repetition had any force as substantive evidence to prove the *facts*, but only to remove an imputation upon the witness. * * * If he stood before the court unimpeached, it was unnecessary and mischievous to incumber the court and oppress the defendant with his garrulousness out of court, and when not on oath."

An extended discussion of this question will be found in 2 Wigmore on Evidence, Section 1122 *et seq*.

In *State v. Egbert*, 125 Iowa 443, the defendant was charged with an assault with intent to commit rape. In this peculiar crime, proof of outcry or complaint upon the part of the prosecuting witness is consistent and evidence of that fact or either of these facts is admissible. But notwithstanding the well-known rule, in the *Egbert* case we said:

"But we know of no authority for admitting proof of the declaration of the prosecuting witness not constituting a part of the *res gestae* with reference to the identity of the defendant with the person committing the crime. Certainly it is not competent to thus build up a case against defendant by proving declarations of the prosecuting witness with reference to his identity."

In the case of *State v. Vincent*, 24 Iowa 570, at 574, this court said:

"When the credibility of a witness is impeached by direct testimony of his want of reputation for truth, or of his general moral character (which may be done, under our statute), or by proof of his having made or testified to different and conflicting statements, he cannot be supported by evidence that statements of the facts made by him before the trial correspond with his evidence."

If such evidence cannot be introduced to support a witness where he has been impeached, how could it be used by the State in the first instance? We think it was error for the court to thus permit the defendant to testify to whom he talked, and what he told the various parties named. Further than this, however, the State was permitted to introduce at least one witness, the deputy sheriff, who testified, in substance, that Canning spoke to him on the subject of the proposition defendant had made to him about putting someone on the road work. This evidence was wholly inadmissible. The trouble with both of these propositions lies in the fact that, if they were permitted, the witness would be thereby raising a false issue; and if he told several persons, and each of these persons was permitted to come in and testify that he had so told them, the jury would be liable to lose sight of the merits of the case in the maze of testimony thus introduced on the propositions. As bearing on this proposition, see *State v. Stubbs*, 49 Iowa 203; *State v. Deuble*, 74 Iowa 509; *State v. Hoover*, 134 Iowa 17; *Rhutasel v. Stephens*, 68 Iowa 627; *State v. Porter*, 74 Iowa 623; *State v. Williams*, 195 Iowa 785.

II. The defendant introduced witnesses who, after qualifying, testified that his general reputation for honesty in the

 community where he resided was good. On cross-examination of these witnesses, these questions were asked: "You know of his having been indicted on a charge of liquor nuisance, don't you?"

Another: "Do you know that he has been convicted on two different occasions in this court for maintaining a liquor nuisance and selling intoxicating liquors contrary to law?"

Another: "Don't you know that, in the year 1925, the then county attorney of Monroe county filed an information against Mr. Bell (defendant) in the district court, charging him with maintaining a still out there in your community?"

The previous questions were all answered, "No." The last question was answered: "I heard of it."

Another: "Well, Mr. Pryor, you have said here that Mr. Bell's real character for honesty is good. If you had known that, as a matter of fact, in January, 1919, Mr. Bell had been convicted for maintenance of a liquor nuisance in this county in this district court, would that somewhat change your opinion as to his real character as to honesty?"

The witness answered, "No."

The witness Frew was asked:

"Did you ever hear that, in 1925, there was a county attorney's information filed against him (defendant), charging him with a violation of the liquor law near his home at 18? Did you ever hear it said that, in 1919, Emmett Bell (defendant) entered a plea of guilty here to a violation of the liquor laws, and was sentenced by one of the judges of our court? So, if that is a fact, you don't know anything about it?"

The witness answered, "No."

W. R. Powell was asked:

"Did you ever hear that, in 1915, in the district court of Monroe County here, Emmett Bell was convicted by pleading guilty of a charge of maintaining a liquor nuisance and selling intoxicating liquors? Did you ever hear that again, in the district court of Monroe County, Iowa, in January, 1919, Em-

mett Bell again pleaded guilty to a charge of maintaining a liquor nuisance, and paid a fine of $500 and costs? Mr. Powell, if you had heard or knew of the conviction of Mr. Bell for maintaining a liquor nuisance in the district court of Monroe County, once in October, 1915, and once in January, 1919, that would considerably modify your statements as to what you thought about his real character, wouldn't it? A. Knowing it to be true, it would,—yes.''

The witness Armstrong was asked:

''Well now then, didn't you hear and know of Emmett Bell's being convicted of maintaining a liquor nuisance in January, 1919, in the district court of Monroe County, Iowa, and paid a fine and costs on that conviction? A. I heard a little talk about it, but I don't know it. Q. Well, had you ever heard that, in 1915, before that time, that, in the district court of Monroe County, Iowa, Mr. Bell pleaded guilty and was convicted on a charge of selling intoxicating liquor in this court right here—district court? A. No, I hadn't. Q. But you did hear about his conviction in 1919; you told me that, didn't you? A. No, I didn't hear it. Q. Well, if you had known about his conviction, that would materially change your estimate of his real character, wouldn't it? A. Yes, in a way.''

Witness Loeb was asked:

''Did you ever hear that, in 1915, Mr. Bell pleaded guilty to selling liquor in this county in this court before one of our judges? A. I heard something of it. Q. Did you hear about either of the instances I have asked you about, about a conviction in this court? A. I said I heard of it. Q. Does that affect your opinion about a man's reputation? A. Not as to his honesty.''

The witness, Arthur Lewis, was asked:

''Did you ever hear that, in 1915, the month of October, Mr. Bell was convicted of selling intoxicating liquor contrary to law, and a charge against him in the district court of Monroe County, Iowa, right here in Albia? A. No. Q. Well, didn't you ever hear of his having been convicted in 1919 in the district court of Monroe County, Iowa, of maintaining a liquor

nuisance, and paid a fine here in this court upon that conviction,—or didn't you know anything about that? A. Well, if I did, I don't remember it now. Q. Well, if, as a matter of fact, you had known or heard of these matters,—the ones I have just spoken to you of,—these convictions on these charges, if you had known it yourself, or heard people talk about that, that would very materially change your answer with relation to character and reputation of Mr. Bell as to his honesty in your own estimate? A. No, it wouldn't change my mind as to his honesty.''

The questions above set out to each of these witnesses were asked on cross-examination, and it is insisted that the court erred in permitting this line of cross-examination.

The question has been definitely settled by our decisions, and the distinction between character and reputation has been very definitely marked out. Character is what a person actually is; reputation is what is said of him in the community where he lives. *State v. Prizer,* 49 Iowa 531; *State v. Egan,* 59 Iowa 636; *State v. Seevers,* 108 Iowa 738.

The testimony of these character witnesses was confined to the proposition that Bell's reputation as to honesty in the community where he lived was good. A proper cross-examination, under such circumstances, should be confined to what was said of and concerning the defendant in the community in which he lived, and to what was said of him in the community that would in any way affect the trait of character about which the testimony was being given.

In *State v. Burris,* 194 Iowa 628, we said:

''We have recognized the rule that, upon the cross-examination of character witnesses, they may be interrogated in regard to rumors and reports in the neighborhood, reflecting upon the particular character of the party about whom they have testified.''

In *State v. Kimes,* 152 Iowa 240, we said:

''While the rule is that, in rebutting evidence of good moral character offered by defendant, the State cannot introduce evidence as to particular transactions, it is certainly competent, on cross-examination of a witness who has testified as to de-

fendant's good moral character, to ask whether there have not been rumors or reports in the community as to his bad character with reference to particular transactions.''

In *State v. Rowell*, 172 Iowa 208, at 213, we said:

''Some evidence was received on cross-examination of general reputation witnesses that they had heard of dealings inconsistent with good repute. * * * We gather one objection made to this to be that, while the testimony in chief was, as it must be, confined to general reputation, this cross-examination permitted and inquired into particular items of conduct. We think it does not seek to show substantive acts on part of the defendant, and is not an attempt to prove that general reputation is bad because specific acts of defendant were bad. It seems to us to be directed instead to whether it was generally reputed in the community that defendant had done disreputable things. This is permissible because it bears directly on the value of the testimony in chief. That proof of isolated instances of evil conduct may not negative that their doer is in good repute is no reason why the jury may not be advised that the witness who said the general reputation of the defendant in certain respects was good, was giving such testimony when in fact the community was rife with reports indicating the contrary. Such testimony tends to show either that the witness was unfamiliar with the reputation concerning which he has testified, or that his standards of what constitutes good repute are unsound. It is one thing to negative good repute by evil conduct which may have been unknown to the community in general; quite another to show that a witness testified to defendant's good repute in a community when general report in that community was so strongly condemnatory of defendant as that the witness either was in ignorance of defendant's reputation or testified in disregard of what he did know. This distinction has often been overlooked, but it exists, and has overwhelming support both in reason and in authority.''

In *Gordon v. State*, 3 Iowa (Clarke) 410, this court, through Judge Wright, said:

''* * * the defendant sought to prove his general good character as a quiet and peaceable citizen. This he had a right to do. The prosecution then, against his objections, asked the

824

witness if he knew of instances in which defendant had been engaged in difficulties with individuals, and the State was permitted to go into an examination of particular instances of difficulties with others. This would have been clearly improper, if offered by the State as direct testimony, and we cannot conceive it to be any less so, from the fact that it was drawn out on cross-examination. It is evidence of *character* which is admissible, which, of course, is to be confined to the trait of character which is in issue; or, as it is expressed by some of the writers, the evidence ought to have some analogy and reference to the nature of the charge. But the evidence must be confined simply to the general character or reputation, and neither can ask questions as to particular facts or difficulties.''

In *State v. McGee,* 81 Iowa 17, a character witness, having testified that the defendant had a reputation of being a quiet and peaceable citizen in the community where he resided, on cross-examination was asked as to his (defendant's) being engaged in particular quarrels, and over objection was allowed to answer. It was there held that the ruling was wrong, citing *Gordon v. State,* supra.

It is apparent from these cases and many others in this state in which the same questions have been suggested, that the cross-examination of a character witness must be confined to reports and rumors in the community which affect the character of the defendant as to the particular trait involved. In the examinations above set out, it is apparent that this rule was violated. Some of the witnesses were asked whether they did not know that the defendant on certain occasions had been convicted of violating the liquor laws of this state. This was wholly erroneous, under the rules above set out. Further than this, in our opinion, the case having been tried in 1927, reference to matters that occurred in 1915 and 1919 are too remote to be considered on this question.

III. Defendant requested an instruction that the fact that he had not been called as a witness to testify in the case could not be considered by the jury for any purpose, and the requested instruction further proceeded: ''And you are advised that you will not, in your deliberations, consider the fact

of his not so testifying for any purpose whatever, in arriving at your verdict.''

That such an instruction, or one of like import, must be given when asked by the defendant has been decided in the case of *State v. Carnagy*, 106 Iowa 483.

In the instructions given, however, the court said to the jury, in substance, that the defendant had a right to testify in his own behalf or not, as he might elect, and if he did not so testify, it should not be considered against him; and that the jury must not give any thought to the fact that the defendant did not testify in his own behalf. We think this is a sufficient compliance with the law on this proposition, as required by Section 13891, Code of 1927, as explained in the *Carnagy* case, above cited.

The court gave an instruction on good character, in which he said, in part:

''Previous good character or reputation is not, of itself, a defense, but if established, it is a circumstance which should be considered by the jury in connection with all other evidence, and should be allowed such weight as the jury believes is fairly entitled to receive, as tending, if it does, to show that a man of such reputation or character would not be likely to commit the crime charged; and it may be sufficient to turn the scale in his favor, but its value as defensive evidence in any given case is to be determined by the jury.''

An instruction similar, in most respects, to the one given, was passed upon by this court in *State v. Donovan*, 61 Iowa 278, and was held good as against the very assault made upon the instruction in the instant case.

The court gave an instruction, in substance, that the only question for the jury to determine was the guilt or innocence of the defendant, and that, when they had determined that fact, their function, duty, and responsibility would end. The instruction then proceeded:

''In case the defendant is found guilty, the duty and responsibility of fixing such punishment as the law prescribes, rests

upon the court, and the extent of such punishment is not a matter for your consideration."

This instruction is a correct statement of the law, and we see no reason why it was not proper for the court to give the same.

Some other questions are discussed in the case, but, after reviewing the same, we are of the opinion that they will not arise on a retrial of the case, hence give them no further attention.

For the errors herein pointed out, the case is reversed.— *Reversed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.