STATE OF IOWA, Appellee, v. LEWIS F. WHEELOCK, Appellant.

No. 41521.

180

APRIL 3, 1934.

See, also, 216 Iowa 1428, 250 N. W. 617.

Thomas J. Guthrie and George A. Wilson, for appellant.

Edward L. O'Connor, Attorney-general, Walter F. Maley, Assistant Attorney-general, and Francis J. Kuble, Assistant County Attorney, for appellee.

CLAUSSEN, C. J.—The defendant was charged by indictment with the crime of driving an automobile while in an intoxicated condition. The case was tried to a jury, which found the defendant guilty as charged.

I. In the course of the examination of prospective jurors

a demonstration took place, which was participated in by spectators and certain members of the jury panel. In the further course of the selection of the jury, one of the members of the panel who took part in the demonstration was retained on the trial jury, over objection on the part of the defendant. Such juror stated upon her examination that she had no opinion as to the guilt or innocence of the defendant and had no bias or prejudice against him. The trial court has a large discretion in passing on the qualifications of jurors. In the present instance the propriety of allowing this juror to remain upon the panel has twice passed the scrutiny of the trial court. A majority of this court are of the opinion that an abuse of discretion by the trial court is not shown by the record.

The grounds for challenges to a juror for cause are specified in Code section 13830. If the particular jurors were subject to challenge for cause, it must have been under subsection 11 of that section, which reads as follows:

"11. Having formed or expressed such an opinion as to the guilt or innocence of the prisoner as would prevent him from rendering a true verdict upon the evidence submitted on the trial."

The question is whether the jurors had formed or expressed such opinions. It was for the trial court to weigh the circumstance of participation in the demonstration and the answers of the jurors in the determination of the question. It has been held that membership in an anti-thief association does not of necessity disqualify a juror in the trial of a larceny charge. State v. Van Hoozer, 192 Iowa 818, 185 N. W. 588. Strong prejudice against the nationality of the defendant has been held not to disqualify a juror ipso facto. State v. Giudice, 170 Iowa 731, 153 N. W. 336. Ann. Cas. 1917C, 1160. And the existence of an opinion concerning the guilt or innocence of the defendant, other than a fixed opinion, has been held to be no insuperable objection to serving on a jury. State v. Smith, 73 Iowa 32, 34 N. W. 597; State v. Munchrath, 78 Iowa 268, 43 N. W. 211; State v. Lindsay, 161 Iowa 39, 140 N. W. 903; State v. Ralston, 139 Iowa 44, 116 N. W. 1058; State v. Brady, 100 Iowa 191, 69 N. W. 290, 36 L. R. A. 693, 62 Am. St. Rep. 560. It is the duty of the court to determine whether the juror has such convictions in the matter as will prevent the return of an impartial verdict (State v. Munchrath, supra; State v. Brady, supra), and in the determination of the question the trial court rightly has a large, al-

though not unlimited, discretion. State v. Teale, 154 Iowa 677, 135. N. W. 408; State v. Heft, 155 Iowa 21, 134 N. W. 950; State v. Brown, 130 Iowa 57, 106 N. W. 379; State v. Kendall, 200 Iowa 483, 203 N. W. 806. The answers of the juror indicated that she was qualified to act as a juror. It cannot be said that her indiscretion in taking part in the demonstration so completely overbalances the result of her oral examination as to warrant interference with the action of the trial court.

 In the examination of jurors the court refused to permit jurors to reveal the identity of other members of the panel who participated in the demonstration above referred to. Appellant complains of this. The purpose of the examination of a juror is to determine his or her fitness to sit on the jury. What other members of the panel may have done is not material to that question.

 II. Appellant complains that misconduct of counsel for the state and many other occurrences of the trial prevented him from having a fair trial. An enumeration of all the matters complained of in this respect would serve no useful purpose. The trial was long and was stubbornly contested on both sides. All of these matters took place under the eye of the trial court. The matter of granting a new trial for alleged misconduct of counsel and the many incidents that happen in the trial of a case is peculiarly within the discretion of the trial court. State v. Cooper, 169 Iowa 571, 151 N. W. 835; State v. Waterbury, 133 Iowa 135, 110 N. W. 328; State v. Wilson, 157 Iowa 698, 141 N. W. 337; State v. Johns, 152 Iowa 383, 132 N. W. 832; State v. McIntire, 89 Iowa 139, 59 N. W. 419. The entire record has been carefully examined by this court and the ruling of the trial court will not be disturbed.

III. The trial of the case attracted large crowds to the courtroom. During the course of the long trial there was one outburst in the courtroom, which is described in the record as "a very distinct murmuring or rumbling of suppressed laughter which did not get into the realm of loud laughter at all", in addition to that which occurred during the selection of the jury. The outburst was promptly suppressed by the court. The crowded condition of the courtroom made it inconvenient to keep witnesses in attendance, and to get them on the stand when required. Defendant contends that the audience was hostile to him and that its influence on the jury was coercive, and that the situation in the courtroom prevented him from having a fair trial. The record indicates that the trial court had

the entire situation well in hand. It does not present a situation in which we are at liberty to disturb the judgment of the trial court.

IV. The defendant complains of rulings of the trial court upon objections to questions asked him on cross-examination and re-cross-examination in relation to his use of intoxicating liquor on the day of the occurrence and concerning his possession of intoxicating liquor in his home on that day. He was not asked on direct examination whether he had used intoxicating liquor on that day. Neither did he say anything on direct examination as to whether he was drunk or sober. In this situation he complains that the questions in relation to his use of intoxicating liquor were not directly connected with matters concerning which he had testified in chief and consequently improper under the provisions of Code, section 13892. The defendant testified to the occurrences which took place between the time he left his home and the time of the collision, and also testified to the manner in which the accident happened and his trip to the hospital, the administration to him in the hospital of apomorphine and of being taken to the police station, and his mental or nervous condition at the police station, not however with reference to being drunk or sober.

The record indicates that at the close of his cross-examination he was asked one question in relation to whether he had used intoxicating liquor that morning before he started on that trip. On redirect examination he testified that he had one drink at about 1 o'clock. Upon recross-examination, inquiry was made concerning where he had taken this drink and whether he had partaken of intoxicating liquor at other places, including his home, and whether he had intoxicating liquor in his home.

We have held that a defendant testifying in his own behalf is subject to cross-examination exactly the same as any other witness in relation to matters pertaining to his memory, motives, history, and credibility, and we have recognized that the extent to which such inquiries may be carried rests largely in the discretion of the trial court. See State v. Burris, 194 Iowa 628, 190 N. W. 38, where the authorities are collected. Notwithstanding the fact that the defendant had not testified concerning the use of intoxicating liquor, upon direct examination, it seems obvious that it was proper under the record to make inquiry concerning the use of intoxicating liquors by the defendant for the purpose of enabling the jury to properly weigh the testimony of the defendant. It was a matter immediately

associated with his ability to observe and remember what transpired, and the use by him of intoxicating liquor might quite logically have had as much effect upon his condition at the police station, whatever that may have been, as the administration of apomorphine at the hospital. See State v. McClain, 191 Iowa 750, 183 N. W. 305.

Possession of intoxicating liquor by the defendant was undoubtedly unlawful, and he complains because the tendency of the cross-examination was to prove such unlawful act. Ordinarily proof of other unlawful acts is not permissible in a criminal prosecution, but cross-examination is not improper merely because it tends to establish an unlawful act, if it is proper in other respects. Evidence which is otherwise admissible is not to be excluded because it tends to establish a criminal act. State v. Burzette, 208 Iowa 818, 222 N. W. 394. Under the record there was no abuse of discretion on the part of the trial court in permitting the cross-examination, the redirect-examination, and the recross-examination, of the defendant to take the courses disclosed by the record.

V. Several witnesses for defendant testified that the general reputation of the defendant for general moral character was good. On the cross-examination of such witnesses inquiry was made by counsel for the state whether the witness had *heard* that within two years the defendant, while operating a car while in an intoxicated condition, had been involved in certain specified accidents. Such questions were objected to by defendant, but the witnesses were required to answer the questions. The objection to this line of cross-examination is that proof of good reputation for general moral character cannot be met by proof of specific acts of misconduct. The witnesses were not asked whether the defendant had been involved in the specific accidents, but were asked whether they had *heard* of such matters. Reputation is made by what is said and heard. As affecting the credibility of a witness who testifies that the defendant's general reputation for general moral character is good, it is proper to inquire whether the witness has *heard* of instances of misconduct. State v. Kimes, 152 Iowa 240, 132 N. W. 180; State v. Rowell, 172 Iowa 208, 154 N. W. 488. The situation in the case at bar is readily distinguishable from the case of State v. Van Hoozer, 192 Iowa 818, 185 N. W. 588, 589. In that case the character witness was asked: "Have you ever heard that this defendant sold three stolen tires to Mr. Spillman?" Thereupon, in rebuttal, Spillman was called as a

witness for the state and testified that the defendant's reputation was bad. The defendant did not cross-examine Spillman. Then, in argument, counsel for the state argued that on account of the failure of the defendant to cross-examine Spillman, it must be true that the defendant had offered to sell the stolen tires to Spillman. The defendant was not being tried for selling the stolen tires. The objection made to these proceedings was not directed to the propriety of the cross-examination of the character witness, but was directed at misconduct of counsel in making the argument as above set forth. The case was reversed on account of the improper argument made by counsel for the state.

Likewise, the case at bar is readily distinguishable from the case of State v. Burris, 194 Iowa 628, 190 N. W. 38, in which the character witness testified to the good character of the defendant for a particular trait. In that case it was held improper to permit the witness to be asked whether he had heard of specific acts of misconduct wholly foreign to such particular trait.

The case at bar is also distinguishable from State v. Bell, 206 Iowa 816, 221 N. W. 521. In that case the witness was asked whether he *knew* of instances in which the defendant had been in difficulties. In the case before us the question was whether the witnesses had *heard* of the matters. The witnesses were properly subject to cross-examination as to what they may have heard. This does not involve proof of specific acts of misconduct.

VI. The results of the collision were truly tragic. In the course of the trial the gruesome picture was revealed by the evidence. Defendant complains that it was painted with unnecessary persistence and vividness and that the jury were thus inflamed against him. More than fifty witnesses were examined in the course of the entire trial, and the abstract of the testimony takes up several hundred pages of the record. In this situation we can do no more than express the conclusion we have reached, namely, that there is no merit in this contention. The story could not be told without bringing in horrid details, and the numbers of the witnesses made repetition unavoidable.

VII. Appellant complains because the witnesses for the state, who testified that he was intoxicated, were not required to state the facts on which their opinion was based. The rule is firmly established in this state that a witness may testify whether a person is sober or intoxicated without first stating facts on which the opinion

is based. State v. Cather, 121 Iowa 106, 96 N. W. 722; Kuhlman v. Wieben, 129 Iowa 188, 105 N. W. 445, 2 L. R. A. (N. S.) 666; State v. Kendall, 200 Iowa 483, 203 N. W. 806.

We find no merit in appellant's complaint that the trial court refused to instruct the jury in regard to nonexpert evidence in relation to the intoxication. It is doubtful, to say the least, whether any instructions could aid the jury in evaluating the evidence of witnesses on the matter of intoxication. Common good sense is adequate for the discharge of this task.

VIII. In the eighth instruction the court told the jury, in substance, that the facts, if they be facts, that the defendant was operating his automobile in a negligent or reckless manner, or that he may have violated some statute relating to the operation of motor vehicles, or that he may have been involved in a collision with another automobile on the highway, or that he was at fault for the occurrence of such collision, would not be sufficient to establish his intoxication, but that the evidence introduced concerning the manner in which he operated his automobile, and the fact that there was a collision, could be given such weight as the jury thought it should be given, together with all the other facts and circumstances disclosed by the evidence, in determining whether or not the defendant was intoxicated. Appellant contends that this instruction having been given, the court erred in refusing to give certain instructions asked by the appellant as to what constituted the negligence, or fault on the part of the defendant, or violation of statute referred to in the instruction given. Such matters were collateral to the issues being tried. The jury were permitted, by the court's instruction, to take all the evidence into consideration in the determination of the guilt or innocence of the defendant, regardless of whether it established negligence or a violation of law, and this was proper. We think the instruction given by the court was such as would be easily understood by the jury when considered in connection with the evidence which had been presented in the case.

IX. Appellant further complains that the court erred in refusing to instruct the jury that, before they could find defendant guilty, they must find that his ability to drive his automobile was affected by liquor. The defendant was charged with the violation of a specific statute. This statute made it a criminal offense to operate a motor vehicle on a highway "while in an intoxicated condition". In his instructions the trial court stated that:

"Under the laws of the state of Iowa a person is in an intoxicated condition in a legal sense when he is so far under the influence of intoxicating liquor that his passions are visibly excited or his judgment impaired by the liquor."

This instruction follows the definition given in State v. Pierce, 65 Iowa 85, 21 N. W. 195. This definition was approved and followed in State v. Baughn, 162 Iowa 308, 143 N. W. 1100, 50 L. R. A. (N. S.) 912, and in the case of State v. Kendall, 200 Iowa 483, 203 N. W. 806, which, like the instant case, was a case involving the operation of a motor vehicle by the defendant while intoxicated. Under the interpretation which has been given to the term intoxication, there was no error on the part of the court in giving the instruction of which complaint is made.

In our opinion, there was likewise no error on the part of the trial court in failing to give the jury any further instruction to the effect that they must find that the defendant's judgment must be visibly impaired before they found him intoxicated, as contended in a separate division of appellant's argument. We think the instruction given, taken in connection with the other instructions, fully covered the law as to the question of intoxication.

X. It is claimed that the court erred in failing to give an instruction to the effect that the presence of the odor of liquor on defendant's breath after the accident would not in itself be proof that the defendant was in an intoxicated condition. We think the instructions given by the court sufficiently apprised the jury as to what was necessary to constitute intoxication, and it was not necessary for the court to enumerate each particular item of evidence which might be considered in that regard, but which might not by itself alone be sufficient to establish intoxication. As men and women of ordinary intelligence and experience, we think it reasonable to assume the jurors understood, without any such instruction, that the presence of the odor of liquor is not of itself proof of intoxication. There was no error in not giving such instruction.

XI. The ninth instruction given by the court was as follows:

"The State has been permitted to ask certain questions in regard to whether or not certain witnesses would have testified that the defendant was of good reputation for moral character if said witnesses

had known that the defendant had been involved in prior collisions or had partaken of intoxicating liquors to excess.

"While there is no evidence in this record to show that the defendant had been involved in any prior collisions or automobile accidents or had partaken of intoxicating liquors to excess prior to June 21, 1931, these questions were proper and the witnesses were permitted to answer them, so that you might get their viewpoint of what they meant by the defendant having a reputation for good moral character and for no other purpose."

The appellant alleges that the court, having given this instruction, should have given further instructions asked by appellant which told the jury, in substance, that the state had the right to rebut the testimony given by appellant's witnesses as to his reputation in the community for good moral character. The appellant also contends that, since there was no evidence that defendant had been involved in any prior collisions or automobile accidents or had partaken of intoxicating liquors to excess prior to June 21, 1931, the jury should have been instructed to give no consideration whatever to the implication that defendant had been involved in other collisions and automobile accidents while intoxicated, which was contained in the questions propounded to these witnesses.

The instructions are not vulnerable to the objections made. The court told the jury that there was no evidence in the record that the defendant had been in any prior collisions or accidents or had ever partaken of intoxicating liquors to excess. The court also specifically limited consideration of the answers given by the character witnesses upon cross-examination to their proper field.

XII. The seventh instruction given by the court was as follows:

"It is the contention of the defendant that his condition after the accident was caused by the resultant shock, if any, of the accident and the injection of apomorphine.

"You are instructed that you may and should take into consideration such evidence in determining the question of whether or not the defendant was in an intoxicated condition at the time he was operating his automobile. If the evidence above referred to, taken into consideration with all the other facts and circumstances as disclosed by the evidence, raises in your mind a reasonable doubt, as

hereinbefore defined, as to the guilt of the defendant, then it would be your duty to acquit him."

Appellant contends that in giving this instruction the court erred in assuming that the condition of the defendant after the accident was abnormal. In another division of his argument appellant urges that the court erred because, in giving instruction 7, the court placed the burden upon the defendant to prove that any abnormality in his condition after the accident was due to shock or the injection of apomorphine. The instruction was undoubtedly given for the benefit of the defendant. This fact is especially apparent if the instruction is read in the light of the record. When so read—and it was thus read to the jury—there is not the slightest doubt concerning the propriety of the instruction. The "condition" referred to in the instruction is the condition disclosed by the evidence. The instruction does not assume that it was either normal or abnormal. Upon the other ground of objection it must be conceded that the use of the word "raises" was not happy. But this instruction does not stand alone. In other instructions the court instructed the jury concerning the burden resting upon the state to establish the guilt of the defendant beyond a reasonable doubt, and concerning the presumption of innocence and its consequences. In this situation it is inconceivable that the jury were deluded into the belief that any burden of proof rested upon the defendant or that the state was relieved, in any aspect of the case, from the burden of establishing every essential element of the offence charged against the defendant, beyond a reasonable doubt.

XIII. Appellant complains that the court erred in permitting the prosecution repeatedly to ask leading questions of immature witnesses. The use of leading questions is a matter largely within the discretion of the trial court. We have examined all of the instances referred to in appellant's argument, and we find no abuse of such discretion.

XIV. Appellant alleges error on the part of the court in denying the defendant the right to impeach the state's witnesses by means of previous contradictory statements and testimony relating thereto, and in a further division of his argument appellant complains of the court permitting the state to impeach a witness for the defendant in an identical manner. We have examined the record as to the matters complained of, and, while we are unable to understand why some of the questions asked by appellant's attorney were

not proper for the purpose of testing the memory and credibility of the witnesses, for which purpose the attorney stated they were also asked, we do not think that the errors, if any, in the court's rulings are such as to warrant a reversal.

XV. Appellant complains that the court made improper remarks in the presence of the jury tending to disparage defendant's counsel. We have examined the portion of the record in which the offensive language is alleged to have been used by the court, and we cannot find anything in the incident referred to that we deem worthy of consideration. The remark of the court which is objected to was made in response to a statement of the attorney for the appellant, and we believe it no exaggeration to say that it was provoked by such remark of the attorney for the appellant. In our opinion, however, neither the remark of the attorney for the appellant, nor the response of the court thereto, constituted any grievous breach of decorum, and there is certainly no reversible error involved in what was said by either party. We may state that the court, on its own motion, struck out the response made by the court and instructed the jury to give no attention to it.

XVI. Finally, the appellant complains that the court erred in permitting the state to introduce as rebuttal testimony that which should have been part of the state's case in chief. The rebuttal introduced by the state had reference to skid marks on the pavement at the place and time of the accident. Evidence as to such skid marks had first been introduced by the defendant, and we see no error in allowing the state to introduce evidence in rebuttal of the evidence thus introduced by the defendant.

XVII. Appellant complains because the court refused to instruct the jury that the state had the right to rebut the defense testimony in relation to his good moral character. The state introduced no evidence for that purpose. It seems to be appellant's thought that because the state had the right to rebut such evidence, the court should have told the jury of the state's right in this respect. Appellant does not suggest how the jury would be better able to solve the fact questions in the case after being apprised of this right on the part of the state, and we are frank in the admission of our inability to discover any reason for suspecting such to be the case. The contention is novel but without merit.

The duty imposed by statute upon this court in criminal appeals is to examine the record, without regard for technical errors

or defects which do not affect the substantial rights of the parties, and render such judgment on the record as the law demands. Code section 14010. We have examined the record in the light of this duty. The trial of the case extended over nearly two weeks. It was stubbornly contested at every point. At the close of the proceedings in the lower court the trial judge was satisfied that the defendant had had a fair trial. The verdict of the jury is abundantly sustained by the record. We think the law demands that the judgment of the trial court be affirmed. In consequence, the judgment of the trial court is affirmed.—Affirmed.

STEVENS, KINDIG, ALBERT, and ANDERSON, JJ., concur.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority's opinion, and therefore respectfully dissent.

In the majority's opinion in the first division, they say: "In the further course of the selection of the jury, one of the members of the panel who took part in the demonstration, was retained on the trial jury, over objection on the part of the defendant." The majority did not see fit to set forth the nature of this demonstration. No doubt there might be demonstrations which would not affect the qualifications of the prospective juror. But it is hard for me to see how any one can say that the demonstration which took place in this case did not definitely and positively show that the prospective juror had an opinion that would disqualify said juror from acting in this case. The record shows that one of the jurors, R. C. Park, on being examined to ascertain whether or not he was qualified to sit as a juror, was asked the following question:

"Q. Now, I will ask you this question. The defendant is on trial for driving a car while intoxicated, and, as you look upon him here this afternoon, do you look upon him as guilty or innocent? A. Well, I would say from the evidence, he was guilty."

Upon the making of this answer there occurred a loud clapping and cheering in the courtroom. Even the trial court characterized this as an outbreak.

After the prospective juror who had made this statement was excused, one Esther Figg was called for examination as to her qualifications to sit as a juror. She was asked the following questions:

"Q. Were you in the court room yesterday afternoon? A. Yes, sir.

"Q. Were you sitting near any of those people that carried on this demonstration? A. What do you mean?

"Q. Yesterday afternoon, the hand-clapping? A. Well, I was sitting there among the crowd.

"Q. You didn't take any part in it, did you? A. I did, clapped my hands, yes.

"Q. What? A. Yes, I did clap my hands."

The defendant immediately challenged for cause the said Esther Figg upon the grounds disclosed by her examination. The state resisted the challenge and the court overruled the challenge, and the appellant later used one of his peremptory challenges to exclude her from the jury. Later the appellant was forced to accept as one of the jurors to sit upon his trial another person who had applauded the answer given by Park that he believed the defendant was guilty, appellant's peremptory challenges having been exhausted. It is hard for me to see how one can say that a defendant, charged with a crime, can have a fair and impartial trial if, before the case commences and before having listened to any of the evidence, prospective jurors, sitting in the courtroom, applaud openly a statement that the defendant is guilty. It seems to me conclusive evidence that when this woman applauded the statement of the prospective juror that the defendant was guilty, she had at that time a fixed opinion—not only a fixed opinion, but she was so biased and so prejudiced that she permitted herself to applaud the statement as to the guilt of the appellant before she had even heard any of the evidence in the case.

In the case of State v. Reed, reported in 201 Iowa 1352, at page 1354, 208 N. W. 308, this court said:

"Appellant herein exhausted all of his peremptory challenges. Under such circumstances, appellant is not required to show that he suffered prejudice by reason of having his challenge for cause overruled and a disqualified juror left upon his jury. Such prejudice will and should be presumed. The state has not shown that the error was without prejudice. Any other rule would leave a defendant in a position where he might face an entire panel of disqualified jurors with his proper challenges for cause overruled, and be compelled to exhaust his peremptory challenges upon those who should have been excused for cause and thereby be left with no peremptory challenges at all. The statute does not permit a defendant to be placed in any such situation. He is entitled, as a matter of law, to

his challenges for cause against disqualified jurors, and to still have available to himself his peremptory challenges."

In the case of State v. Reed, above quoted, this court reversed that decision because of the fact that the defendant "is entitled, as a matter of law, to his challenges for cause against disqualified jurors, and to still have available to himself his peremptory challenges."

And so in the case at bar, no clearer showing could have been made, in my judgment, that a prospective juror had a fixed opinion, that the prospective juror was biased and prejudiced against the defendant, than was made when it was shown that Esther Figg openly applauded a statement that the appellant was guilty. It was the duty of the lower court to have sustained the challenge for cause, and the failure to do so was error. It makes no difference with what crime a defendant is charged, and it is immaterial who that defendant is; he is entitled to a fair and impartial trial. No trial can be fair and impartial if the jurors, who are selected to try it, demonstrate their feelings against the defendant before the case commences. It hardly seems to comport with our ideas of justice that a defendant should not be allowed to exclude for cause a prospective juror, who has applauded a statement of another prospective juror before he had heard the evidence, that "the defendant is guilty." In all criminal cases, and especially in cases such as this, which the record indicates has aroused considerable public interest and not a little adverse feeling towards the appellant, I believe the trial court should make particular effort to adhere to suggestions contained in State v. Teale, 154 Iowa 677, 135 N. W. 408, and cited with approval in several cases, wherein we said, at page 682:

"We are constrained to say in this connection, however, that we see no occasion in the ordinary administration of the criminal law in this state for the close rulings on the qualifications of jurors that are constantly brought to our attention. Although a ruling may be technically right, if it must be so doubtful as to raise a fair question as to its correctness, it is far better to give the accused the benefit of the doubt, to the end that he and all other men may be satisfied that his rights have not been invaded. Confidence in the fairness and impartiality of each member of a jury, which shall be sworn to try a man on a charge involving his life or liberty, is

of the greatest importance to the welfare of the state. Indeed, it is of such paramount importance to every citizen that the time and expense necessary to secure jurors as to whom no doubt may rightly exist is an insignificant consideration."

The appellant also complains that in the cross-examination of certain witnesses the special prosecutor by his cross-examination deliberately injected prejudicial questions which unfairly reflected upon the character and credibility of the witnesses for the appellant. In the examination of the witness Willis O'Brien, the special prosecutor asked whether, when he and others, who were with him, first heard of the collision involved in this case, the remark was not made, "The damned fool has got just what we have been expecting." The question was objected to and the objection sustained by the court. In the examination of the appellant's witness L. W. Ellis, the special prosecutor asked the following question: "Now, let's see, for the purpose of identification, are you the same L. W. Ellis who was arrested for the illegal possession of intoxicating liquor at the State Fair a year ago last summer?"

Of course, both of these questions should not have been asked. They were improper and were so held by the trial court, and they could have been asked for no other purpose than to attempt to prejudice the jury against the appellant.

The record shows that the appellant on direct examination had not been asked in regard to drinking or possessing intoxicating liquor. Near the close of the cross-examination the record shows as follows:

"Q. Mr. Wheelock, did you drink any intoxicating liquor that morning before you started on that trip? A. Yes, sir.

"Judge Guthrie: Wait a minute. I want to make an objection before that is answered and I want the objection to go in ahead of the answer.

"The Court: The record may so show.

"Judge Guthrie: Objected to as incompetent, improper, immaterial, irrelevant and not proper cross-examination.

"The Court: This is for the purpose of testing his credibility only. That is what it will be allowed for now. Overruled. (Defendant excepts.)

"A. I say I did.

"Redirect examination.

"I drank one drink about 1 o'clock.

"Recross examination.

"Q. Where did you have that drink?

"Judge Guthrie: Objected to as incompetent and not proper cross-examination.

"The Court: This evidence is admitted for the purpose of testing the witness' credibility and nothing else. You may answer. (Defendant excepts.)

"A. At Roger Finkbine's house. I didn't drink any liquor at my own home before I left.

"Q. Did you have any liquor in your own home?

"Judge Guthrie: Objected to as not proper cross-examination.

"The Court. Overruled for the same reasons as the last preceding objection. (Defendant excepts.)

"Judge Wilson: Not inquired into on direct examination.

"The Court: Overruled for the purpose of testing the credibility of the witness. (Defendant excepts.)

"Q. Did you have any intoxicating liquor at your own home at all that morning, in the home? A. In the home?

"Judge Guthrie: Objected to as immaterial, incompetent and not cross-examination.

"The Court: Overruled. (Defendant excepts.)

"A. I am not sure. I think there was some.

"Q. What was it?

"Judge Guthrie: Objected to for the same reason.

"The Court: Overruled. (Defendant excepts.)

"A. What was it?

"Q. Yes. A. Some wine. I don't know if I had any whiskey there. I did not drink any there at any time that morning.

"Q. How much whiskey did you have there at your home?

"Judge Guthrie: Objected to as incompetent and the witness has already testified that he didn't know that he had any and not proper examination.

"The Court: Overruled. (Defendant excepts.)

"A. I don't know that I had any.

"Q. You don't say that you did or did not? A. I do not.

"Q. Do you recall there being any bottles of whiskey up there in your dining room there?

"Judge Guthrie: The same objection.

"The Court: Overruled. (Defendant excepts.)

"A. I do not.

"Q. Or do you recall there being any liquor of any kind in the cellarette in the dining room? A. Cellarette, I haven't any.

"Q. Cellarette or cabinet? A. I have no cellarette or cabinet there.

"Q. How much of this wine did you have there?

"Judge Guthrie: The same objection, incompetent, irrelevant and immaterial and not cross-examination.

"The Court: Overruled. (Defendant excepts.)

"A. One gallon of Jewish wine that had never been opened.

"Q. Did you have any other liquor that you recall in home besides the whiskey and wine?

"Judge Guthrie: Objected to as not proper cross-examination.

"The Court: Overruled. (Defendant excepts.)

"A. Not to my knowledge."

Code section 13892, provides that:

"When the defendant testifies in his own behalf, he shall be subject to cross-examination as an ordinary witness, but the state shall be strictly confined therein to the matters testified to in the examination in chief."

In construing this section this court has held that, when a defendant in a criminal case testifies in his own behalf, he stands upon the same footing as any other witness for cross-examination with relation to his memory, motives, history, or matters affecting his credibility; and that the extent to which such inquiries may be carried necessarily rests largely in the sound discretion of the trial court.

In the case of State v. Burris, 194 Iowa 628, 636, 190 N. W. 38, 41, we said:

"Section 5485 is not meaningless, and it should be respected and enforced by trial courts in accordance with its manifest purpose. When the cross-examination of a defendant is not strictly confined to the matters testified to in the examination in chief, it must be limited, even under our previous holdings, to such matters as properly inhere in a cross-examination as affecting the credibility of the witness. But it is not within the province of a prosecutor, under the pretense of affecting the credibility of the witness, to

propound interrogatories without any pretense or attempt to establish the truthfulness of the matters suggested by such inquiry and solely to cast insinuations upon the defendant. To open the doors to the cross-examination of a defendant by a proceeding of this character would leave him subject to insinuation and suggestion of gross misconduct, without any semblance of basis to support the same and with limitations fixed only by the extent of the imagination of the interrogator and his audacity in propounding the inquiries."

Even though it may be said that the question asked on cross-examination as to his drinking on the day of the occurrence in question proper as to testing his credibility, it seems to me a severe stretch of the rule, allowing cross-examination to test credibility, to permit the state to proceed to inquire into what, if any, liquor he may have had in his home; to insinuate that there was liquor in a cellarette or cabinet in his dining room; and, after he had stated that he had no whisky in his home, no cellarette or cabinet in which intoxicating liquor was kept, and that the only liquor in his house was one gallon of Jewish wine, which had not been opened; then to continue to question him as to what other liquor besides the whisky and wine were in his home. While it is conceivable that the appellant might have had liquor in his home which was legitimate and in compliance with the law, we think it is quite apparent that the questions in regard to his having liquor in his home were intended to refer to and were understood by the jury as referring to intoxicating liquors kept for beverage purposes. The appellant was, therefore, not only required to answer questions as to matters which had not been gone into on his direct examination, but he was required to answer questions which involved a violation of the criminal laws of the state of Iowa and of the United States. Certainly, no one can say that the test of the credibility of the appellant as a witness justified the extent to which the cross-examination was allowed to be carried. The sole purpose of the cross-examination, as I see it, was to create a feeling of prejudice against the defendant, and not for the purpose of testing his credibility. This of course was error. This was denying to the defendant a fair and impartial trial.

In the direct examination of one of the witnesses for the appellant, he was asked whether he knew the general reputation for general moral character of the appellant in the community in which he resided prior to June 21, 1931, and in answer thereto he stated that he did and that such reputation was good. On cross-examina-

tion, after the witness had been asked whether he had heard rumors and reports previous to June 21, 1931, that the appellant on occasions was drunk and intoxicated to excess, and had answered that he had not heard such rumors, and after he had been asked whether he knew of his own personal knowledge of the appellant being intoxicated, and had answered that he did not, the special prosecutor was allowed to proceed with the cross-examination as follows:

"Q. Have you heard that within two years prior to that time while in an intoxicated condition he had run into a car belonging to Harry Russell on Grand Avenue, and damaged that car, had fled from the scene of the accident and had been brought back to face the consequences?

"Judge Wilson: Just a minute. Object to this as incompetent.

"The Court: Overruled. (Defendant excepts.)

"A. No, sir, I never heard of an accident of that kind.

"Q. Have you ever heard that within the two years preceding that time and while in an intoxicated condition he has collided with a car in which Angeline Replinger was riding, a maid in the Gardner Cowles home?

"Judge Wilson: Same objection.

"The Court: Overruled. (Defendant excepts.)

"A. No, sir."

The record shows that practically the same course of cross-examination was pursued with reference to several other witnesses who had testified on direct examination that they knew appellant's general reputation for general moral character and that it was good. It will be noted that in the direct examination of each of these witnesses they were asked as to appellant's general reputation for general moral character. This question, therefore, called for general reputation and not for their knowledge of character itself. On cross-examination the state was allowed not only to question the witnesses as to such general reputation, but such witnesses were questioned about specific instances of alleged misconduct and drunkenness upon the part of the appellant. General reputation for moral character being the matter of inquiry, it would have been permissible for the state to inquire of these witnesses as to whether they had heard rumors or reports current in the community as to the specific transactions inquired about. State v. Kimes, 152 Iowa 240, 132 N. W. 180. The question put to appellant's witnesses, however, did not

refer to rumors or reports current in the community, but referred to and implied the actual happening of the specific transactions referred to in the questions.

In State v. Van Hoozer, 192 Iowa 818, 822, 185 N. W. 588, 589, the trial court had permitted the state, in cross-examining defendant's character witnesses, to question them about other specific acts of misconduct of the defendant, and in reversing a judgment of conviction, we said:

"It is for the good of society, for the welfare of the state, that crime shall be punished, and that the prosecution of criminals shall be vigilant and vigorous. But, under our laws, the person charged with crime has certain well-known rights which the state is bound to respect. Time and again we have declared that proof of other crimes than the one with which a defendant is charged is not admissible against him. The state cannot do, by the indirect method resorted to in the instant case, that which it would not be permitted to do directly."

In State v. Burris, 194 Iowa 628, 190 N. W. 38, the state, over objection of the defendant, was allowed to ask character witnesses of the defendant whether or not they had heard of certain specific acts of misconduct on the part of the defendant, and in referring to the action of the trial court in that regard, this court said, at page 638:

"We have recognized the rule that upon the cross-examination of character witnesses they may be interrogated in regard to rumors and reports in the neighborhood reflecting upon the particular character of the party about whom they have testified. State v. Rowell, 172 Iowa 208, 154 N. W. 488; State v. Kimes, 152 Iowa 240, 249, 132 N. W. 180. But the cross-examination of the witnesses in the instant case did by no means conform to the rules recognized in our cases. The result could not be otherwise than to greatly prejudice the appellant by the insinuations and suggestions contained in these interrogatories. The examination should not have been permitted in this way, and it was prejudicial error not to sustain the objections interposed to this cross-examination."

Certainly, in the case at bar, the insinuations and suggestions contained in the interrogatories were greatly prejudicial to the appellant, and in view of the cases just cited, which state the rule of

law well established in this state, the objections of the appellant to the questions asked by the attorney for the state, involving specific acts of misconduct on the part of the appellant, should have been sustained, and the failure to sustain them, is reversible error.

In view of the errors pointed out, I would reverse and remand the case.

I am authorized to say that Justices EVANS, DONEGAN, and KINTZINGER concur in this dissent.