PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ENRIQUE BELARDO, Defendant and Appellant.

No. 5824. Argued January 21, 1936.—Decided July 30, 1936.

492

*Faustino R. Aponte* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

M<small>R</small>. J<small>USTICE</small> W<small>OLF</small> delivered the opinion of the Court.

Enrique Belardo was convicted of second degree murder in the District Court of Humacao. On appeal to this court the defendant has assigned three errors. One is based on the finding of the court that there was a real conflict between the evidence introduced by the People and that offered for the defense. Another has to do with the exclusion by the court of certain evidence, and the other is directed at the insufficiency of the instructions.

After examining the record and reading the respective statements of the witnesses for and against the defendant, we may say that two distinct versions are presented.

The People's case is that the defendant on the day of the shooting was in hiding and ambushed the deceased at a place near the seashore. When the deceased walked past the spot where the defendant was hiding, the latter fired at

him with his revolver wounding him fatally through the head and killed him instantly.

The defendant's case, on the other hand, is that on the day of the shooting Enrique Belardo went to pasture his horse and on the way back was unexpectedly attacked by the deceased with a sharp sabre-like knife. Belardo then retreated several steps until he found that his retreat was cut off by some wires and then, remembering that he had a revolver and reasonably thinking that his life was in danger, shot and killed the deceased in self-defense.

■ The first assignment of error is as follows:

"The District Court of Humacao erred in not annulling the verdict of the jury and in refusing to grant a new trial inasmuch as the conflict between the evidence presented by the people and the defendant is a matter of appearance rather than of actuality, it appearing from the evidence that the homicide in this case was justifiable."

The appellant is simply mistaken. There was ample evidence given by the witnesses for the government tending to show that the defendant was guilty. What counsel for appellant is really doing in his brief is to attempt to show that the witnesses for the government so contradicted themselves, or at least the principal witness, that none of the evidence of the government should be believed. We do find inconsistencies but not to such an extent that we could say the jury had no right to believe beyond a reasonable doubt the evidence tending to convict the defendant.

■ The second error went to the refusal of the court to permit the defendant to attack the credibility of a certain government witness by proof of a prior conviction for perjury in open court, made a misdemeanor by statute in Puerto Rico.

Section 244 of the Code of Criminal Procedure (1935 ed.) reads:

"A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his gen-

eral reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a felony.''

Section 520 of the Code of Civil Procedure (1933 ed.) provides:

''A witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that this general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony.''

Under these circumstances, no felony being shown, we are not thus far convinced that the court was mistaken in the position that it assumed.

■■ The third assignment of error is as follows:

''The District Court of Humacao committed error in defining murder in the second degree inasmuch as it excluded in its definition of the crime the element of premeditation.''

The passage quoted from the instructions of the court is as follows:

''The distinction between the two degrees of this crime is that in murder in the first degree the killing (muerte) must be deliberate and premeditated unless when it happened, arson, as I have said before, a rape, a robbery, a burglary or mayhem was being committed or attempted to be committed, while in murder in the second degree the killing (muerte) is not deliberate or premeditated, is an unlawful killing with malice but without deliberation or premeditation.''

What the court truly said was that murder in the second degree was illegal killing with malice but without deliberation or premeditation. The three aplicable Sections are:

''Sec. 199.—Murder is the unlawful killing of a human being, with malice aforethought.''

The Spanish text says:

''Artículo 199.—Asesinato es dar muerte ilegal, a un ser humano, con malicia y premeditación.''

but the English text should prevail.

"Sec. 200.—Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. It is implied when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

"Sec. 201.—All murder which is perpetrated by means of poison, lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, is murder of the first degree, and all other kinds of murders are of the second degree."

Reading these Sections it is clear that in all murders malice aforethought must exist and the court said so in the beginning of its instructions. It is an indispensable prerequisite for the crime of murder, but in a number of cases both of murder in the first degree and murder in the second degree, the killing may not have been premeditated or deliberate, although the malice was so premeditated or deliberate. As the court had already said that the malice must be premeditated the part of the instructions cited could only refer to the killing itself. It might be said, as our later citations will show, that in second degree murder there may be an absence of express intent to kill, but the intention is implied from the nature of the act by which death is produced.

Take the definition of murder in the first degree set out in Section 201, *supra,* where murder is committed by means of poison, lying in wait, torture, or any attempt to commit a felony therein enumerated; the offender may have had no conscious thought of killing or the killing may have been done without premeditation, yet each of the acts was done with malice premeditated and also in most cases deliberate. When a person tortures another he is acting with premeditated malice; when he administers poison, the same thing is true; likewise, when he attempts to commit any felony described in Section 201.

Perhaps a familiar case of murder in the second degree is where one person shoots at another with the intention merely to wound, but by reason of some carelessness or striking another object, he kills the victim directly or the nature of the wound causes his death or another is killed. On a charge of murder in the second degree the defendant would be guilty, although he had no definite thought of killing, because his act was done with malice aforethought or the malice was premeditated.

These considerations are supported by the following cases from California: *People* v. *Long*, 39 Cal. 694; *People* v. *Foren*, 25 Cal. 361; 13 Cal. Jur., p. 603, et seq.; 29 C. J. 1118, par. 105 et seq., and also some of the previous paragraphs.

California Jurisprudence says in this regard (13 Cal. Jur. 603, sec. 18):

"In General.—All murders not of the first degree are of the second degree. Accordingly, a murder is of the second degree where it is not perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, nor in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem. But to constitute murder of this degree the act of killing must be committed with a felonious purpose and accomplished by felonious means. It has been said that if the killing is done without the provocation and sudden passion which reduces the offense to manslaughter, or is done in the commission of an unlawful act, the natural consequences of which are dangerous to life, or is committed in the attempt to perpetrate a felony other than those mentioned in the description of murder in the first degree, or if the circumstances of the killing show an abandoned and malignant heart—it is murder in the second degree, unless the facts prove the existence in the mind of the slayer of the specific intent to take life. Murder in this degree is an unlawful killing with malice, but without deliberation or premeditation. Any intimation that in murder of the second degree there may be an intention to take life is to be considered as referring to the intent which the law imputes by reason of the corrupt motive of the slayer, or otherwise, and not to an actual preconceived design to kill.

"To reduce a crime from first to second-degree murder, it is not essential that the killing should be done upon the instant that provocation is given, or so soon thereafter that the blood has not had time to cool. If, as a matter of fact, a killing is done without deliberation and premeditation, except in the special cases mentioned in the code, it is only murder of the second degree. In either case the intent to take life exists as matter of law. In first degree murder the evidence must show that there was a deliberate intent to take life, while in that of the second degree the intent to take life need not be proven, and may not in fact exist; it is implied from the fact of an unlawful killing."

See also note to *Demato v. People,* 35 L.R.A. (N.S.) 621; and some of the cases under the title of Homicide in Vol. 10; Dec. Dig. Key–23; Vol. 12, (2nd) Dec. Dig., Keys 9 and 23; Vol. 14, (3rd) Dec. Dig., Keys 9 and 23; *State v. Tippet,* 63 N.W. 445; *People v. Hubbard,* 220 Pac. 315.

Although not as directly discussed, we find support for these ideas in *People v. Rodríguez,* 34 P.R.R. 443.

The appellant cites our decision in the case of *People v. Roldán,* 27 P.R.R. 719, 722. There we held that the court was in error when it said "that murder in the second degree existed when there was neither deliberation nor premeditation." If we meant to say that the court was in error in excluding the element of premeditated malice, then the opinion could stand and it is perhaps susceptible of that explanation, but so far as that case conflicts with the present opinion it must be considered to be overruled in this regard. The statement was, moreover, made incidentally to discussing some other error.

■■ In the record before us it will be seen that the appellant asked for certain instructions especially with respect to manslaughter and excepted to some of the actions of the court. He asked no correction of the definition of murder in the second degree and did not even except to the instructions in general, although, of course, exceptions should be specific. In the case of *People v. Cardona,* decided May 29, 1936 *ante.* p. 104 we have reviewed the authorities to

the effect that the trial court should ordinarily be given an opportunity to correct a mistake.

We think it convenient because the matter so frequently recurs, to quote the applicable section of the law as follows:

"Section 1.—Whenever it appears from the record in any criminal case upon appeal in the Supreme Court, that any requirement of the law has been disregarded by the trial court, the judgment shall not be reversed, unless the error appearing from the record was calculated to injure the rights of either of the parties, and was duly excepted to in the trial court; *Provided, however,* that the appellate court may take cognizance of fundamental errors, appearing in the record, although not excepted to, and render such judgment thereon as the facts and the law may require." Act approved May 30, 1904, Laws of 1905, p. 10. (See section 362 of the Code of Criminal Procedure, 1935 Ed.)

Thus it is again evident that the rule is that an exception should be taken in the district court. So far as any possibility of a fundamental error is concerned we take note that the evidence tended to prove rather murder in the first degree than murder in the second degree and that counsel for the defendant may not have cared to have the jury sit upon the question of murder in the first degree *vel non* and hence did not try to obtain a better definition of murder in the second degree. This makes it more evident that the instructions should be made the object of exceptions.

The judgment and the order denying the motion for a new trial should be affirmed.

Mr. Justice Córdova Dávila and Mr. Justice Travieso took no part in the decision of this case.